BLACKMORE, Appellant, v. BOARDMAN, Respondent.

1. A covenant for perpetual renewal of a lease is valid.
2. A covenant for renewal of a lease is an incident to the lease and will pass by an assignment of the unexpired term ; a sale by the sheriff under an execution of the interest of the lessee in the land will pass to the purchaser the covenant for renewal.
3. The secretary of the board of directors of the St. Louis Public Schools is a proper person to whom to deliver applications for renewal of leases made by said board with covenants of renewal. The declarations of a deceased secretary, made when applied to in behalf of an applicant for renewal before the expiration of the time within which demand of renewal should be made, are admissible in evidence to show that the application for renewal had been received by him as secretary in due time.

*Appeal from St. Louis Land Court.*

This cause was heard before the supreme court upon the following agreed statement of facts: "This was an action of ejectment brought by the plaintiff Blackmore against the defendant Boardman to recover possession of the premises in the petition mentioned and described, being a lot or parcel of ground situated in the city of St. Louis, containing one arpent and 66-100. The defendant answered, and the cause, by consent, was tried by the court. The facts as they appeared on the trial were as follows : By deed dated October 25, 1847, the board of President and Directors of the St. Louis Public Schools demised and leased to the plaintiff Blackmore a certain tract or parcel of land of upwards of six arpens, of which that mentioned in the petition is part, for the term of ten years, commencing from and after October 15, 1847. Said lease contained a covenant for renewal in the following terms : "And it is hereby covenanted and agreed by and between the said parties, that at the end of the term hereby demised this lease shall be renewable for the further term of ten years ; and so on from time to time perpetually at the option of the party of the second part, his executors, administrators or assigns, he or they giving to the party of the first part, in every instance, a notice in writing

of his or their wish to renew the same three months at least before the end of the term. And every renewal lease shall contain all the covenants, agreements, clauses and stipulations herein contained, with this exception, that the annual rents to be reserved in every renewal shall be six per centum upon the value of the demised premises, exclusive only of improvements thereon placed by the said lessee or his legal representatives, if any, which value shall be estimated by disinterested freeholders of the city of St. Louis, one of whom shall be selected by the party of the first part, and the other by the party of the second part, his executors, administrators or assigns ; and to be paid quarterly."

" On the 6th of January, 1857, said premises so leased to Blackmore were duly sold by the sheriff of St. Louis county to Augustus W. Lewis under executions on judgments obtained by one William Lingo against said Blackmore in March and May of 1856, and the sheriff conveyed the same to said Lewis by deed dated February 12, 1857, which deed being duly acknowledged was recorded February 23, 1857. A few days after his purchase, Lewis went into possession of that portion of the premises sued for, and while in possession conveyed the whole of said tract of land to John F. Hagne, by deed dated February 25, 1857. The defendant Boardman holds under said Hagne,

" Previous to the expiration of the original lease, a notice in writing or application for renewal on the part of Hagne, in due form for that purpose, was left at the office of the board of Public Schools. The evidence on that subject was as follows : The notice was left at the office of said board on July 3, 1857, with a man in the office of said board, but who was not one of the board, who at the time was either dusting or sweeping out the office. The secretary was not in at the time, and the man who was there took the notice with instructions to hand it to the secretary as soon as he should come in. John H. Watson was the secretary at the time to the board. He has since died. He (Watson) a day or two after acknowledged to the witness Kurlbaum — who

left the notice at the office of the board July 3, 1857, and who called there to see about the same — that said notice had been received. There was no entry on the minutes of the proceedings of the board showing when said notice was received, though it was shown that the same was officially before the board August 11, 1857, being the second meeting of the board held after said notice was left at the office. To the testimony of the said witness Kurlbaum as to what was said to him by the deceased secretary, plaintiff objected at the time; but the court overruled the objection and plaintiff duly excepted. The covenants of the lease had in all other respects been complied with. Plaintiff Blackmore, within the time provided for that purpose in the clause for a renewal, also made application therefor, and whilst his application was pending on September 15, 1857, Hagne sent into the board a remonstrance in writing against the granting of a renewal to him, setting forth his own claims as assignee and again asking for a renewal to himself. In fulfilment of their covenant for renewal, (as they supposed and intended,) the board on December 1, 1857, executed the lease to plaintiff Blackmore upon which this suit is founded for a portion of the premises, and for the residue thereof executed leases to other parties holding or claiming under plaintiff. Said leases are dated December 1, 1857, and are for ten years from October 15, 1857, with like covenants of perpetual renewal.

" Three questions arose upon the trial, which are the only ones now submitted to the court; all others, whether consisting of defects or errors of pleading or of practice on either side, being hereby expressly waived. The first is, whether the covenant contained in said lease to Blackmore, being a covenant for perpetual renewal, is legal? Second, whether the right of renewal was acquired by Lewis under the sheriff's levy, sale and deed? Third, whether the evidence given by defendant and which was objected to by plaintiff, touching Hagne's notice of application for a renewal, was legal and competent?

" The sheriff's notice accompanying the deed is as follows:

' By virtue, &c., I have levied upon and seized the following described real estate as the property of the said William Blackmore, to-wit: the unexpired term of a lease for ten years, made October 25, 1847, to said Blackmore by the board of President and Directors of the St. Louis Public Schools on the following described real estate, to-wit [describing the tract of six arpens as in the lease] ; said lease is recorded in book No. 4, page 254, of the records of St. Louis county, and is on the same property on which Blackmore now lives, with brick house and appurtenances. And I will, on, &c., at, &c., sell at public vendue, for cash, to the highest bidder, all the right, title, interest, claim, estate and property of the above named William Blackmore of, in and to the above described property, to satisfy said execution and costs.' The sheriff's deed recites the levy in the same words, with the same description and reference to the lease as above ; states that, agreeably to said advertisement, he (the said sheriff) exposed to sale ' all the right, title, claim, interest and property of the said William Blackmore of, in and to the above described real estate, together with all the rights, privileges and appurtenances thereunto belonging ;' and the conveyance to Lewis, the purchaser, is in the same words above recited : ' of all the right, title, interest, claim, estate and property of the said William Blackmore of, in and to the above mentioned and described property that I might sell as sheriff as aforesaid by virtue of the aforesaid writs and advertisement.'

"The plaintiff asked the following instructions : ' 1. A declaration of a member of the board not produced as a witness, though now dead, that the application of defendant for a renewal had been received by the secretary, is not evidence that the board had received defendant's application. 2. The privilege of renewing the lease did not pass by the sheriff's sale to his vendee, and has never vested in the defendant according to the law of the case arising on the sheriff's levy and advertisement and sale and other proceedings and the deed from the sheriff's vendee to Hagne. 3. Unless the de-

fendant applied to the schoolboard for a renewal of the lease three months prior to October 15, 1857, his right to such renewal is gone.' The third instruction was given; the second was refused; and the first was modified by the court so as to read as follows : ' The delivery of an application for a renewal to a young man in the office of the board three months before October 15, 1857, who was not one of the board and who is not shown to have had any agency in its behalf, is not proof of a delivery to the board, though accompanied with instructions to deliver the application to the board, unless said application for a renewal was received by the board, or came to their knowledge three months before October 15, 1857.' The plaintiff duly excepted to the refusal to give the first and second instructions, and to the modification by the court of the first instruction. The court also gave the following instruction at the instance of the defendant : ' The deeds from the sheriff to Lewis and from Lewis to Hagne, respectively, carried with them the covenant for renewal contained in the original lease from the board of Public Schools to Blackmore, dated in 1847.'

" The court rendered judgment for the defendant. Plaintiff in due time moved for a new trial, which being again overruled, he again excepted and appealed to this court."

*R. S. Hart* and *Glover*, for appellant.

I. A covenant for perpetual renewal is not favored. (14 Kent, 199; 4 Bac. Abr. 890 U.) It is capable of severance from the land so as to abide with the lessee after a sale of the current term. The question whether there is such a severance depends upon the intention of the parties. (1 Smith L. Cas.; Spencer's Case, ——; Comyn on Land. & Ten. 61, 157, 159; Smith, L. & Ten. 372; 1 Platt on Leases, 703; 2 Bac. Abr. 352.) The covenant of renewal is not referred to in the sheriff's advertisement, as being the subject of his intended sale; it was neither levied on nor sold. (20 Ohio, 408; 2 Ohio, State, 44.) The rule *caveat emptor* applies in all its rigor to judicial sales. The privilege of re-

newal in this case was of more value than " the unexpired term." It was not alluded to in the advertisement. It did not pass to the purchaser. Hagne forfeited his privilege of renewal, even supposing it to have passed by the sale. The renewal to Blackmore does not enure to Hagne, his application not being shown to have been made in time, the testimony relied on to prove it not being legal.

*Hamilton* and *H. N. Hart*, for respondent.

I. Covenants for perpetual renewal are valid when clearly expressed. (Brown v. Tighe, 2 Cl. & Fin. 416 ; Smith L. & Ten. 234 ; 1 Platt on Leases, 708 ; 4 Jarman Convey. 394 ; Furlong's Land. & Ten. 245, 258 ; 4 Kent, 108 ; 1 Hilliard on Real Pro. 227 ; Coote on L. & Ten. 228.) The right of renewal constitutes a part of the tenant's interest in ·the land, and the grant of the additional term for many purposes is considered as a continuation of the former lease. Whoever takes the lease takes also the renewal. The benefit, running with the land, is transmitted to the assignee, whether he be such by the act of the party or by the law. Here the terms ₊are express to the assignee. The renewal therefore necessarily passed to the person for the time being entitled to the lease. (12 East, 467 ; 1 Platt on Leases, 733 ; 2 id. 419 ; Furlong's Land. & Ten. 533 ; 4 Bing., N. C. 780 ; Spencer's case, 5 Co. 16 ; 4 Kent, 108 ; 4 Jarm. Conv. 425 ; Smith Land. & Ten. 147 ; 5 B. & A. 11 ; Anon. Moore, 159 ; 13 Ired. 194 ; 1 Dev. & Bat. 94 ; 3 Metc. 85 ; 1 N. & McCord, 104 ; Woodfall, L. & T. 86 ; Coote, 230.) It was not in the power of the sheriff to sever the covenant from the interest conveyed, nor did he attempt it. His deed passed all the interest and estate of the lessee in the property described in the notice of sale. It is not necessary for the sheriff, in his deed assigning a term, to state the particular interest the party has ; he may convey by general words. (Palmer's Case, 4 Co. 74 ; 3 T. R. 292 ; Eaton v. Southby, Willis, 138 ; Watson on Sheriff, 128.) The word " term" means not only the limitation of time but the estate and in-

terest also. (Co. Litt. 45 *b*.; Comyn on L. & T. 5; Burton on Real Prop. 124; Draper v. Bryson, 17 Mo. 84.) The evidence as to official acknowledgment of the deceased secretary was properly admitted in evidence.

RICHARDSON, Judge, delivered the opinion of the court.

The numerous authorities cited by the defendant's counsel establish in his favor the first two propositions presented in the statement. As the law discourages perpetuities, it does not favor covenants for continued renewals; but, when they are clearly made, their binding obligation is recognized and will be enforced. The covenant for renewal is only an incident to the lease, and as it can not be passed without the principal, the conveyance of the principal by a proper description will necessarily carry the incident. They are inseparable, and a right of action can not exist in favor of a person claiming the benefit of the covenant without any right to the possession of the leasehold; but the covenant, being annexed to the estate, runs with it, and can not be retained by itself or assigned or severed so as to give an independent cause of action. A sale of the land under execution will pass to the purchaser all the covenants that run with it as effectually as if he had received a conveyance from the lessee; for as the purchaser, after he acquires possession, is bound to pay the rent and in that way assumes the burdens of the lease, he has the right to take advantage of the covenants that touch and concern the thing demised, which enhance the value of the estate.

The parties agree that the application for renewal was in proper form, and, as the minutes of the board of directors show that the notice was before the board on the 11th of August, at the second meeting held after it had been left by Kurlbaum, we think his evidence was properly received. Notice left with a man about the office who had no authority to receive it of course would not bind the Public Schools, but, as the directors are not supposed to be all the time in session,

it would seem that the secretary was the proper person with whom such applications should be left. It would be gross neglect in the defendant if 'he had left the notice with a chance man about the office, and had not returned again to inquire whether it had been received; but the agent was told by the secretary a few days afterwards, and in ample time to have given another notice, that it had been received, and under such circumstances it would be a fraud on him to hold that he had lost his rights by his negligence. The parties have requested that the controversy between them shall be determined in this court in view of all the equities of the case, and, as the admission of the deceased secretary would certainly be competent in a proceeding by the defendant against the board of Public Schools to have specified performance of the covenant for renewal, we have less hesitation in deciding that the evidence was admissible in this suit. The other judges concurring, the judgment will be affirmed.