THE MASSACHUSETTS NATIONAL BANK et al., Appellants, *v.* WILLIAM H. SHINN, as Administrator of WILLIAM P. SHINN, Deceased, Appellant, and GEORGE B. BUTLER, Respondent.

1. APPEAL — REVIEW OF QUESTION OF PUBLIC POLICY NOT SPECIFICALLY RAISED BELOW. A question as to the violation of the constitutional provision against leases of agricultural land for a longer period than twelve years (Const. of 1846, art. 1, § 14; Const. of 1894, art. 1, § 13), though not presented by the pleadings, or at the trial, or on the intermediate appeal, ought to be decided by the Court of Appeals when it is covered by an exception to a referee's report on which judgment was entered, but not specifically mentioned, since it touches the settled policy of the state with reference to a subject of such importance as to be embedded in the Constitution, and the interests of the people should be looked after by the courts even when the party who might have objected is silent.

2. CONSTITUTIONAL LAW — LEASE OF AGRICULTURAL LANDS FOR MINING PURPOSES. The constitutional provision against leasing agricultural land for a longer period than twelve years (Const. of 1846, art. 1, § 14; Const. of 1894, art. 1, § 13) is not violated by a lease for twenty years of all the iron ore contained in, on or under about 114 acres of a farm, with the right to enter upon the lands ·and search for, explore, excavate, dig and carry away the ore, make necessary railroads, wagon roads, tunnels, etc., thereon, wash ore on the premises, and erect such structures as are necessary for the primary object of mining, including workmen's dwellings, where the lessee is expressly prohibited from permitting any business to be done upon the premises "other than the business of mining," while the lessor has the right to use "such portions of the surface" for farming purposes as he chooses, until the lessee elects "to use the same for his mining operations."

*Massachusetts Nat. Bank* v. *Shinn,* 18 App. Div. 276, affirmed.

(Argued May 9, 1900; decided June 12, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 25, 1897, affirming a judgment in favor of defendant George B. Butler, entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry W. Hayden* for the Massachusetts National Bank et al., appellants.

*Barclay E. V. McCarty* for William H. Shinn, as administrator, et al., appellants. The lease, being in contravention of the positive prohibition of the Constitution of the state of New York, was, in all respects, absolutely void. (Const. 1846, art. 1, § 14; Const. 1894, art. 1, § 13; *Clark* v. *Barnes,* 76 N. Y. 301; *Odell* v. *Durant,* 62 N. Y. 524; *Parish* v. *Rogers,* 20 App. Div. 279; *Stephens* v. *Reynolds,* 6 N. Y. 454.) The constitutional provision is so imbedded in the public policy of the state that it could not be waived by the administrator, or even by the original parties to the instrument. (*Willis* v. *Sharp,* 115 N. Y. 396; *Butler* v. *Johnson,* 111 N. Y. 204; *Schutz* v. *Morette,* 146 N. Y. 137; Jessup on Sur. Pr. 941; *Parish* v. *Rogers,* 20 App. Div. 290; *Ferd* v. *Wickham,* 135 N. Y. 223; *Matter of Hatch,* 155 N. Y. 401.) There can be no doubt that the lease now before the court is a lease or grant of agricultural land, for a longer period than twelve years, reserving rent as well as services. (*Odell* v. *Durant,* 62 N. Y. 525; *Stephens* v. *Reynolds,* 6 N. Y. 458.) The constitutional objection is available, in this court, although not raised in the court below. (*Crane* v. *Powell,* 139 N. Y. 379; *Matthews* v. *Matthews,* 154 N. Y. 288.)

*Prescott Hall Butler* and *Eliot Tuckerman* for respondent. The constitutional objection is not available in this court, as it has not been raised in any way in the pleadings or at the trial or on appeal to the Appellate Division of the

Supreme Court. (*Vose* v. *Cockcroft*, 44 N. Y. 415; *Delaney* v. *Brett*, 51 N. Y. 78; *Brookman* v. *Hamill*, 46 N. Y. 636; *O'Neill* v. *N. Y., O. & W. Ry. Co.*, 115 N. Y. 579; *Werner* v. *City of Rochester*, 149 N. Y. 563; *Quinby* v. *Carhart*, 133 N. Y. 579; *Hewlett* v. *Elmer*, 103 N. Y. 156; *Chapman* v. *Gates*, 54 N. Y. 132; *Steers* v. *L., N. Y. & P. S. S. Co.*, 57 N. Y. 1; *Salisbury* v. *Howe*, 87 N. Y. 128.) The lease was valid and in no way in conflict with the Constitution of the state of New York. (Const. 1846, art. 1, § 14; Const. 1894, art. 1, § 13; Willard on Real Estate & Conv. 432; *Odell* v. *Durant*, 62 N. Y. 525; *Parish* v. *Rogers*, 40 N. Y. Supp. 1014; *Witherbee* v. *Stower*, 23 Hun, 27.)

VANN, J. This action was brought to foreclose a chattel mortgage given by William P. Shinn to the Sturtevant Mill Company, and by it assigned to the Massachusetts National Bank. The mortgage covered certain engines, boilers, dynamos and other machinery belonging to a mining plant, erected pursuant to the provisions of a lease of part of a farm for mining purposes, which required the lessee to mine and ship at least 10,000 tons of iron ore each year, and to erect such buildings and provide such machinery as would enable him to do. so. After the lessee and his assignee had been removed from possession of the premises by summary proceedings, under the statute, for non-payment of rent, the landlord refused to surrender possession of the machinery in question and claimed to own the same. The substantial issue, which related to the ownership of such machinery, was decided by the referee before whom the action was tried in favor of the landlord, and the judgment entered accordingly was affirmed by the Appellate Division, one of the justices dissenting.

We think that all of the questions argued in the Appellate Division were properly disposed of by the prevailing opinion in that court, which we should adopt without writing one of our own, were it not for the fact that a new question was discussed before us, to which the attention of the courts below was not called. (*Mass. Nat. Bank* v. *Shinn*, 18 App. Div.

276.) It is now claimed for the first time that said lease, being for the term of twenty years, was a violation of that provision of the Constitution which prohibits a " lease or grant of agricultural land, for a longer period than twelve years, * * * in which shall be reserved any rent or service of any kind." (Const. of 1846, art. 1, § 14; Revised Const. art. 1, § 13.) As this question was not presented by the pleadings, or at the trial, or on the intermediate appeal, the respondent insists that it is not properly before us for consideration. Inasmuch, however, as it is covered by the exception to the report of the referee, though not specifically mentioned, and touches the settled policy of the state with reference to a subject of such importance as to be embedded in the Constitution, we think it our duty to decide it. Where an appeal involves a question of grave public policy, the people are indirectly parties to it, and their interests should be looked after by the courts, even when the party who might have objected is silent.

In October, 1890, the defendant Butler owned a farm of more than 300 acres in the county of Westchester, in one part of which an iron mine had been discovered, and it was supposed that the ore extended for some distance under the adjoining lands. On the 21st of October, 1890, he executed the lease in question, which recites as the object thereof that " the lessee is desirous of acquiring the exclusive right and privilege, upon the payment of certain royalties hereinafter reserved, to mine and ship iron ore from the said property."

The granting clause followed, whereby the lessor conveyed to the lessee for the term of twenty years, "all the iron ore (together with the exclusive right to mine the same) contained in, on or under all that certain piece or parcel of land," which was thereupon described by metes and bounds. The land thus described consisted of 114 acres of said farm, excepting a piece of uncertain dimensions and of no apparent importance. After the granting clause was the following statement: " The said ore is supposed to be contained in the hill known and designated as the Clover Hill, but in any event is to be taken

to include all the iron ore that can be economically mined or taken out of the above-described premises, together with all the necessary rights and privileges of entering into and upon said lands and searching for, exploring, excavating, digging and carrying away said ore, and of removing said ore through or out of any shafts, slopes or tunnels which the lessee may dig, erect or construct upon said premises, at his discretion, in the conduct of said operations of mining."

The lessor further granted, during the term of the lease, the right of way for all necessary railroads, wagon roads, tunnels, etc.; the right of washing ore on said premises, of sinking wells and using the surface waters for that purpose. There was also demised to the lessee "all land within the above-described premises that he may require for the purpose of erecting such buildings and machinery as he may deem necessary for the prosecution of his business of mining, together with land for piling ore or waste, * * * and for the erection of workmen's dwellings, and * * * the right to take without charge by quarrying or otherwise from said land all the stone, earth or other materials (other than wood and timber) that the lessee may find necessary to use in the construction of his railroad and other appurtenances, and in general to enjoy every facility for mining, washing and carrying away said iron ore, together with all tailings resultant from the aforesaid operations, as he would or could enjoy if he, the lessee, were the owner in fee of the premises." The *habendum* clause was confined to "the said iron ores and the said liberties, powers and authorities."

The lease was upon the condition that, if the lessee at the end of three years from the date thereof should have failed to mine any ore from the said premises, the estate granted was to cease and the instrument to become void, "the mining of ore upon, from or under said premises, or some part thereof, within three years from the date hereof, being hereby expressly made a condition precedent to the vesting of any estate, legal or equitable, under these presents in the lessee."

The lessee was to have the privilege of canceling and sur-

rendering the lease at any time within two years from the date thereof " if the preliminary work proposed to be done by him fails to demonstrate to his satisfaction that the aforesaid ore can be economically mined and shipped." He was not to be held liable " for any injury done to the surface of said land by the mining, preparing and removing said iron ore." It was provided that if " the lessor continues, with the consent of the lessee, to use for farming purposes any part of the said premises not used by the lessee for his mining operations," he should pay the taxes for each acre so used as "upon an acre of ordinary farming lands."

The lease contained provisions in great detail relating to the management of the mines in a workmanlike manner, for the drainage thereof and the like. The lessee covenanted to fill up any openings made by him in prospecting for iron ore in which no ore should be found, and that he would not cut or destroy any timber upon the premises. He agreed to pay for each gross ton of ore mined and shipped a specified sum, but the minimum rent or royalties paid in any one year were to be not less than $5,000. He promised not to " permit any business to be carried on upon said premises other than the business of mining, washing, concentrating or shipping ore." The lessor had the right to use "such portions of the surface" for farming purposes as he chose until the lessee elected " to use the same for his mining operations." A large part of the lease was devoted to regulations for weighing, sampling and analyzing the ores, so as to determine the amount of royalties to be paid and for the settlement by arbitration of any dispute that might arise in regard thereto.

We think that this lease does not come within the spirit of the constitutional prohibition, because the property leased was an iron mine extending for an unknown distance under agricultural lands, and was to be used exclusively for mining purposes. The right granted was to mine and carry away the iron ore found under the surface of the ground, and, as incidental thereto, the further right to erect such structures and build such roads as were necessary for the primary

object of mining. The lands not needed for this purpose were to be used by the lessor for agricultural purposes. There was to be no interference with the farming operations of the lessor, except as required by the mining operations of the lessee, who was made the sole judge of the necessity and the extent thereof. It was not a lease of agricultural lands for agricultural purposes, but of mineral lands for mining purposes. The lessee had no right to cultivate the land, for he could simply mine and ship the ore. The pursuit of agriculture was prohibited by the express covenant of the lessee to permit no business to be done upon the premises " other than the business of mining." The evil aimed at by the Constitution is long leases of farming lands for farming purposes, not the leasing of part of a suburban farm for the erection of dwelling houses, stores or manufactories, or of a mine in the bowels of the earth, with the right to bring ore to the surface and ship it. Even if the process of mining necessarily interferes to some extent with the tilling of the soil above the mine, it is merely incidental and does not convert a mine lease into a farm lease. As was said by the court in *Clark* v. *Barnes* (76 N. Y. 301, 304): " It is not provided that no lease shall be valid for a longer term than twelve years; but the provision is that the kind of lease described shall be invalid;" which is, as we think, a lease of agricultural lands, for agricultural purposes, of longer duration than the period named. So, in an earlier case, where the demised premises consisted of six acres of land, " with the right and privilege to the lessee to dig, excavate and remove iron ore from said lot," it was said: " There was nothing in this lease which precluded the lessee from using the land, other than the part specifically reserved, for agricultural purposes if he saw fit. * * * The right to take ore may have been entirely worthless, and the whole value of the premises may have consisted in their use for agriculture, even though that may not have been the purpose for which the premises were in fact leased, still, being agricultural lands and there being no restriction in the lease as to their use, the constitutional prohibition applies. If

all that was intended to be demised was the mining right, the lease should have been put in that form and it would have been free from objection." (*Odell* v. *Durant*, 62 N. Y. 524, 525.)   Thus it appears that the lease must be for agricultural purposes, or must permit agricultural operations by the lessee, for the court declared that agricultural lands, if limited in their use to mining purposes, would not fall within the restriction of the Constitution.   It is true that in an earlier part of the opinion it was said that the character of the land is " the test of the validity of the lease, not the purpose for which the lease was made," but the context shows that this means that the purpose of a lease of agricultural lands is immaterial so long as the lands *may* be used for agriculture.   While the purpose of a lease may be to mine ores, if there is no restriction to that use, the land may be used as a farm and the Constitution thus violated.   Hence, the purpose is no test of validity, for the lease, whatever its purpose, if it covers agricultural lands, must exclude that use, or it will be void, provided the term exceeds twelve years.   If that use is prohibited, the lease is not of a farm to be used as a farm, which, as the history of the times shows, was the particular mischief aimed at in adopting the provision in question.   The theory of the convention which prepared the provision was that long leases of agricultural lands for agricultural purposes were detrimental to the interests of agriculture, because the tenants had " no desire to improve, by the best mode of cultivation, an inheritance which was liable to pass from them or their descendants without a compensation." (*Stephens* v. *Reynolds*, 6 N. Y. 454, 456 ; Debates in Convention of 1846, Atlas edition, pp. 1052, 1053, 1063 ; Willard on Real Estate and Conveyancing, 432.)

We think that the lease under consideration is valid and that the judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., GRAY, MARTIN and WERNER, JJ., concur ; BARTLETT and CULLEN, JJ., not sitting.

Judgment affirmed.