Mary Joe HITE, Appellant,

v.

J. W. CARMON and Virginia Carmon,
his wife, Appellees.

Court of Appeals of Kentucky.

Oct. 20, 1972.

Will Tom Wathen, Wathen & Wesley,
Morganfield, Edwin R. Smith, Jr., Evansville, Ind., for appellant.

J. D. Ruark, Morganfield, for appellees.

REED, Justice.

The issue presented in this case is whether a particular written lease of real property created in the tenant a right of renewal in perpetuity that was exercisable by the tenant's subassignee. The county court held that the lessor had rightfully terminated the lease as to the subassignee and entered judgment that the lessor was entitled to possession. The circuit court on the subassignee's appeal reversed. There was no dispute concerning the material facts. The circuit court concluded that the written lease clearly and unambiguously created a right of renewal by the tenant in perpetuity and that this right inured to the assignees and subassignees of the tenant. We reverse the circuit court.

On April 30, 1943, Mary Joe Hite and her now deceased husband as lessors exe-

cuted a written lease with Sun Oil Company as lessee for the rental of approximately two acres of real property. Sun Oil Company prepared the lease and presented it to the Hites for their signatures.

The specific provisions of this lease pertinent to a resolution of the controversy are: first, a recitation that the lease was "for the purpose of erecting buildings, offices, storing of pipe, erection of racks, oil containers and other material containers, of storing materials and equipment and the erection of such fencing as the lessee shall deem necessary to protect said buildings, materials and equipment . . . "; second, the lease was for an original term of five years, "at an annual rental of $60.00," to be paid to lessors' credit at the Morganfield National Bank: third, a recitation that "lessee shall have the option of extending the original term of this lease from year to year, upon the same terms and conditions and for a like rental, and any annual payment shall automatically extend the term for an additional year."; fourth, a statement that any structures or equipment placed on the leased property would continue to be the property of the lessee with the right of removal upon termination of the lease; finally, it was provided that the lessor should continue to pay the real estate taxes and assessments on the leased land.

Sun Oil Company entered possession of the property under this lease and built two houses for the use of its employees who then occupied them and continued to do so as far as the lessor, Mary Hite, could determine until September 12, 1969, when J. W. Carmon and his wife occupied the leased premises under an assignment of the lease from Miller, who was a Sun Oil Company employee occupying the leased premises. The lessor did not know of the assignment from Sun Oil Company to its employee Miller, nor did she know of a partial assignment by Miller to another employee of the Sun Oil Company, Lloyd Gray, who now resides in one of the hous-

es built by the oil company. The September 1969 assignment from Miller to the Carmons of the remainder of the leased premises was in consideration of $1,500 and the removal of a tool shed for Miller.

When the lessor, Mary Hite, discovered that neither Sun Oil Company nor any of its employees was any longer using the property for the purposes stated in the lease and that without her knowledge the lease had been assigned to the Carmons, she notified them in February, 1970, to vacate the premises. She gave notice that the lease would not be extended for another year and refused to accept a tender by the Carmons of the $60.00 annual rental. The Carmons ignored the lessor's notice and demand of possession; they had apparently again assigned the purported leasehold interest that was assigned to them by Miller, and they were apparently receiving $95.00 per year rental from the tenants to whom they had assigned their claimed leasehold.

It is apparent that the use of the property for the purposes set forth in the lease has been discontinued except to the extent that J. W. Carmon placed a few pieces of pipe on the property after the forcible detainer action was instituted. Although he claims to be engaged in the oil business, there is no pretense that the subject property is being used for purposes of carrying on an oil business of the same nature, type or extent as was the case with Sun Oil Company. J. W. Carmon is not an assignee or business successor of Sun Oil Company, nor does he claim to be.

The circuit court relied exclusively upon the case of Vokins v. McGaughey, 206 Ky. 42, 266 S.W. 907 (1924). In that case, it was said that, as between the original parties to a lease, the courts do not favor perpetual leases and generally will not construe a lease as conferring a right to perpetual renewals unless the lease clearly so provides. The court then addressed itself to the lease in issue in that case and decid-

ed that the language of the lease plainly and unambiguously provided for the right of perpetual renewals by the lessee and that the language of the lease was not susceptible of any other reasonable construction showing a contrary intention. To support its construction of the language, the court noted that the lessee had exercised the right of renewal and paid the agreed rental for 12 years. The court regarded this circumstance as indicative of the interpretation placed upon the lease by the parties to it.

It appears to us, however, that there are significant differences between this case and the Vokins case. In Vokins the subject property was a dwelling house and a lot. The lease contained no recital of its purpose. The right of renewal was conditioned upon occupancy of the premises by the original lessee. The only controversy was between the original lessor and the original lessee concerning the right of the original lessee to again renew the lease in the same fashion she had done for 12 years. We conclude that the circuit court's reliance on the Vokins case was misplaced.

■■ The law does not favor perpetual leases. The mere use in the original lease of the words "from year to year," "yearly," or words of substantially the same meaning, does not, in and of itself, obligate the lessor to renew the lease perpetually, particularly where such provision is considered together with others tending to show that such was not the intention of the parties. 50 Am.Jur.2d, Landlord and Tenant, Sec. 1171.

■ Unlike the lease in the Vokins case, the subject lease contains several provisions strongly indicative of intent that the term of the lease was limited to a period measured by the commercial activity of the lessee or "its successors or assigns" on the leased property. The lessee or its "successors and assigns" are given the right to remove improvements at the termination of the lease. The option of renewal recites that it is upon the same terms as the original lease. One of those terms is the purpose clause that we have quoted earlier. These expressions emphasize the contemplation of the parties that the lessee's business activity on the premises was an integral part of the contractual understanding between them. The purpose clause of the lease and the right-to-remove-improvements clause of the lease both are provisions ordinarily inserted in leases of relatively limited term or duration rather than in leases intended to operate in perpetuity at the sole instance of the lessee.

■ In any event, we are not measuring the rights under the lease between the lessor and the original lessee. In view of the settled policy of the law that views with strict scrutiny and general disfavor the existence of a right of perpetual renewal in a lease instrument, we think it is clear that surely no such right can be extended to these subassignees under the language of this lease, where the business activity for which the original lessee leased the premises has ceased. Cf. Anno: Lease—Second or Perpetual Renewal—31 A.L.R.2d, 607, 627–630.

The judgment of the circuit court is reversed with direction that a new judgment be entered confirming the judgment of the county court.

All concur.