**Dolly FARRIS, Widow; Curtis D. Farris, Single; Mary Ann Miller and Jack Miller, Husband and Wife; Boyd Ray Farris and Janet Farris, Husband and Wife; Marie McClellan, Widow; Charles Farris and Mattie Farris, Husband and Wife; and Kermit W. Farris and Shirley Farris, Husband and Wife, Appellants,**

v.

**LAUREL EXPLOSIVES, INC., Appellee.**

**No. 89–CA–1587–MR.**

Court of Appeals of Kentucky.

Sept. 7, 1990.

**488**

Joe T. Roberts, London, for appellants Marie McClellan, Charles Farris, Mattie Farris, Kermit W. Farris and Shirley Farris.

Dolly Farris (Kranbuhl), East Bernstadt, pro se.

Curtis D. Farris, East Bernstadt, pro se.

Mary Ann and Jack Miller, East Bernstadt, pro se.

Boyd Ray and Janet Farris, London, pro se.

Charles G. Williamson, Jr., Clay, Williamson & Lane, Mount Sterling, for appellee.

Before GUDGEL, LESTER and McDONALD, JJ.

McDONALD, Judge.

By an instrument dated December 5, 1977, the appellee, Laurel Explosives, Inc., leased from Dolly[1] Farris and Intha Farris a 30–acre tract[2] and a 52½–acre tract,[3] described in detail in Exhibits A and B which are attached to the purported lease, respectively.

The amount of rental was fixed as follows: $2,500 annually for the initial term of the lease which began on May 22, 1976, and expired on May 11, 1982. After the initial term, the lease was automatically renewed for the first additional three-year term (renewal at the election of the appellee in writing) at $3,000 per annum. At the expiration of the first three-year renewal term, the lease then renews for each additional three-year term on the same conditions, the renewal term being 110 percent of the rental prevailing during the expiring term "until $5,000 per year is reached, and then remain constant."

The two tracts had a common source of title through Mary E. Pierce. Tract A was purchased by Kermit Farris on February 26, 1944. Kermit died intestate on July 4, 1974, leaving his wife, Dolly, and five children.

Tract B was purchased by P.O. Farris and Intha Farris, his wife,[4] on July 13, 1945. On May 9, 1963, P.O. Farris died, testate, and as owner of one-half undivided interest in Tract B left such interest to Intha for her life and "then to my children,

---

1. Spelled in some documents as "Dollie."

2. Referred to in Exhibit A as 35 acres.

3. Referred to in the record as 87½ acres by Exhibit B.

4. Deed conveyed Tract B to P.O. Farris and Intha Farris as tenants in common.

Marie, Charles and Kermit." This grant by will made Intha the owner of one-half undivided interest and a life tenant of the other half.

Dolly Farris is living; however, Intha Farris died July 2, 1983, testate, and her will gave all her real estate (one-half undivided interest) as follows:

A) Marie McClellan          41.66%
B) Charles Farris           41.66%
C) Kermit Farris' widow and
    five children           16.67%.

The appellants filed suit against the appellee for a declaration of rights, asking that the lease be declared void or, in the alternative, that the lease be declared as having expired on May 11, 1985. The basis of the suit is that the appellee's leasehold interest was granted by only two cotenants although the remaining cotenants had a fee simple interest in the property. At the time the lease was executed there were ten cotenants in all.

The case was tried by deposition pursuant to CR 43.04, prior to the trial court entering findings of facts and conclusions of law. It was found that the leasehold was used for storage of explosive products. Although most of the cotenants testified they were not aware of the circumstances involved, nevertheless the following facts were found:

(12) The business is conducted on the premises from improvements which are readily visible to those in the vicinity.

(13) Except for Charles Farris, who now lives in Louisville, all of the plaintiffs [appellants herein] have resided near the property for most of their recent lives. Curtis Dean Farris was absent from Laurel County for a period but returned to Kentucky while his grandmother, Intha Farris, was still living.

(14) None of the plaintiffs [appellants] ever registered any complaint about the lease or about defendant's occupation of the premises until November 1, 1984, when a letter was received from attorney, Joe T. Roberts, not contesting the lease, but suggesting negotiations for a renewal term despite the automatic provisions therefore in the lease. Subsequently, plaintiffs [appellants] initiated this action for declaration of rights on or about January 14, 1985.

From the conclusions of law, we quote: [T]he evidence shows that the defendant or its predecessors [appellee] had openly occupied the property prior to December 5, 1977 and have openly occupied it since that date. It also shows that the business improvements on the property are readily visible to those in the vicinity. The evidence overwhelmingly indicates that the plaintiffs had knowledge of the lease in issue. In light of this and the knowledge that the plaintiffs are all closely related family members, it becomes impossible to deny plaintiffs' knowledge of the lease. By having knowledge of it and registering no timely objections to it, the non-joining cotenants have acquiesced and ratified the lease in question. Therefore, the non-joining cotenants, as certainly the joining cotenant, are estopped to deny the validity of the lease.

The trial court adjudged that the lease was a "perpetual lease" in full force and effect, and all the appellants were bound by it, although only two cotenants out of ten signed the lease.

We will discuss only those issues which are necessary to dispose of the appeal. We will first address the issue of the validity of the lease, and whether a perpetual lease is recognized in law.

■   The appellee's brief points out that perpetual leases are recognized and approved of in Kentucky under restrictive circumstances. *See Vokins v. McGaughey,* 206 Ky. 42, 266 S.W. 907 (1924), and *Hite v. Carmon,* Ky., 486 S.W.2d 715 (1972). Both cases stand for the proposition that perpetual leases are not favored in the law but they are acceptable under limited conditions.

The *Vokins* Court, in granting qualified approval to a perpetual lease, said they would not be upheld unless the language was clear, plain and unambiguously expressed. We quote from *Vokins:* "The language employed can be given no other meaning, and the intention to so provide

could not have been expressed more certainly and unequivocally."

The *Hite* case merely echoed the sentiments of *Vokins*.

The *American Law of Property*, Vol. 1, § 3.87 (1952), expresses the principle cogently:

§ 3.87 Perpetual Renewals. A lease giving the lessee a perpetual right of renewal is substantially the *grant of a fee* and is so regarded. Perpetual renewals are therefore valid. But the courts do not favor them; for a lease to be so construed, it must be clear that such was the intention of the parties. Hence, a general covenant for renewal ordinarily will be construed as providing for only one renewal. Perpetual renewal is provided for where the covenant states that the lease is renewable forever or that a renewal lease shall contain a like covenant for renewal. [Emphasis added.]

The lease herein was prepared by the attorneys for the appellee. Dolly Farris and Intha Farris were not represented by counsel. On their own, they were not particularly astute in business affairs. The words of perpetuity in the lease are, "At the expiration of the first renewal term, and each renewal term thereafter, this lease shall be automatically renewed for an additional three (3) years upon the same conditions ..." at the election of and in writing of the appellee only. The lease further provides for automatic increases until a cap of $5,000 is reached, and then the amount of rent shall "remain constant."

The lease describes Dolly and Intha Farris as "landlord," with no description of their limited fee-vested interest in the real estate. Conspicuous by its absence is any description or reference of ownership of the other eight co-owner/tenants in fee of the property.

The lease does not utilize such terminology as "perpetual lease," "perpetual successive renewals" or "forever," which is more descriptive of the actual legal significance imposed, and which may place an ordinary person on notice.

It is our opinion the lease fails to qualify perpetually under the restrictive conditions of qualifications under *Vokins, supra*. Our conclusion is based on *Boyd v. Phillips Petroleum Company*, Ky. 418 S.W.2d 736, 738 (1967), and the doctrine of strict scrutiny, conveyed in the following language:

In placing a construction on this lease, we must first consider all the surrounding circumstances as well as the wording of the contract, including the kind of business of the parties and the matter of which construction would be more reasonable and equitable to all parties concerned and it must be remembered that the proof shows that the contract was prepared by the appellee and where one of the parties prepares the contract, the construction of this contract must be construed more strongly against the party who prepared it than the other party who had no part in the preparation.

If the lease herein is permitted to be perpetual, the appellee, in effect, has acquired the property by a grant in fee without ever securing a deed or outright conveyance. The appellee has accomplished by lease what he probably could not have acquired or accomplished by deed.

■ The next issue is whether one joint owner of real estate can, by separate agreement, burden the interest of the other owners in the same tract of land. Ordinarily the answer is no; however, as the trial court found, and the appellee urges us to adopt, it can be ratified by failure to object and application of the doctrine of acquiescence.

The trial court relied on *Shelby v. Shelby*, 212 Ky. 552, 279 S.W. 942, 944 (1926), where it states:

[I]f the objecting joint tenant consents or in any manner ratifies or acquiesces in the renting made by his cotenant or cotenants, the doctrine contended for will not apply, since in that case the renting joint tenant becomes the agent of the objecting one either by actual consent or by adoption through acquiescence and ratification[.]

In *Shelby*, there was one co-owner, a sister, who did not join in the lease although "[s]he was upon and actually occupied a portion of the premises ... and, while she claims to have made objections, yet the proof is overwhelming that she did not do so. She saw what each tenant was doing...."

We believe the trial court erred by finding acquiescence and ratification. The application of the doctrine of ratification and acquiescence would estop the nonsigning co-owners from asserting their right of possession to the property. Although the evidence negated that the co-owners knew what was happening with the property, the trial court nevertheless assumed that they did because the operations were open and visible. Additionally, the court applied ratification and acquiescence because the co-owners were a close family unit and, therefore, each must have known from the other what was happening upon the property. This was concluded in spite of the fact that one of the co-owners did not live in the area but lived in Louisville, and another lived away from Laurel County for a period of approximately ten years.

It is our conclusion there was a lack of substantial evidence to bind all of the co-owners by the application of the doctrine of ratification and acquiescence.

*Hall v. Baker*, 309 Ky. 58, 215 S.W.2d 945, 947 (1948), implies that simple acquiescence or ratification is not enough, and we quote:

We are quite aware of the fact that where property is owned by tenants in common that a lease by one is not valid as to those who do not join in the lease, and the instrument only operates to make the lessee a tenant in common with other owners....

... It may be conceded that a cotenant not joining in a lease may ratify it by accepting and retaining his portion of the rent *with knowledge* of the circumstances under which it was paid. [Emphasis added.]

Lastly, *Smith v. Ash*, Ky., 448 S.W.2d 51 (1969), discusses equitable principles being applied when equity demands. We are of the opinion the equities of this case are with the nonsigning owners of the property. Therefore, our conclusion is that the lease is void as a matter of law, and the trial court erred in concluding otherwise.

The declaratory judgment is reversed.

LESTER, J., concurs.

GUDGEL, J., dissents.

GUDGEL, Judge, dissenting:

Respectfully, I dissent. In my opinion the language of the lease was sufficiently clear, plain, and unambiguously expressed so as to meet the *Vokins* test for a perpetual lease. The court's finding that the lease was perpetual, therefore, was not erroneous. Moreover, the evidence adduced supports the court's finding that appellants' cotenants ratified and acquiesced in the lease. That being so, the court's finding to this effect is not clearly erroneous and it should not be set aside. I would affirm the court's judgment.