CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellee, v. THE BOARD OF SUPERVISORS, Appellant.

DRAINS: Railway Right of Way—Benefits—Evidence. Evidence
1  reviewed and held to show substantial benefits to a railway right of way by reason of the construction of a public drain.

DRAINS: Railway Right of Way—Assessment of Benefits—Elements
2  Considered. In the assessment of a railway right of way for the cost of a public drain, it was held proper to consider the following elements of benefit, viz., (a) The greater ease and lessened expense of maintaining the right of way, (b) the greater permanence and security of embankments, (c) the increased life of all wooden materials, (d) the opportunity to substitute drainage pipe in lieu of trestles, and (e) the increased value of the acreage of the right of way, without reference to the fact that it was used for railway purposes.

**DRAINS:** Assessments—Equality of Burden—Railway Right of Way.
3 Special assessments should be so levied that approximate equality of burden is attained. Therefore, in assessing the cost of a drainage improvement, it was improper to so assess a railway right of way as to entirely absorb the benefits, while adjoining farm lands were so assessed as to absorb only one half or less of the benefits. In such case, held proper for the lower court to scale down an assessment of $1,500 on a railway right of way to $800.

*Appeal from Hamilton District Court.*—HON. C. G. LEE, Judge.

FRIDAY, JUNE 18, 1915.

REHEARING DENIED TUESDAY, OCTOBER 5, 1915.

*D. C. Chase* and *J. M. Blake,* for appellant.

*J. L. Kamrar, J. C. Davis* and *George E. Hise,* for appellee.

WEAVER, J.—Some two miles of the plaintiff's right of way are included within the limits of Drainage District No. 114, in Hamilton county. The total cost of the drainage system was about $91,000, and in assessing the same upon the property of the district, · the commissioners estimated the amount chargeable to the railway company at $1,500. The estimate was approved by the board of supervisors and a levy made accordingly. The company appealed to the district court where, after hearing the evidence, it was ordered that the assessment be reduced to $800, and from this ruling and judgment the defendant has appealed to this court.

It is argued for the appellee that the railway is in no manner benefited by the drainage and ought not to be subjected to any tax therefor; or, if it be chargeable with any part of the cost thereof, then the assessment of $1,500 is excessive and out of proportion to the benefits.

I. The trial court evidently found against the plaintiff's proposition that it was not benefited in any material degree

by the improvement, but sustained its further contention that

1. DRAINS: rail-
way right of
way: benefits:
evidence.

the assessment is excessive. It is true that the company put upon the stand different engineers in its employment, some of whom seem to go to the extent of saying that the drainage of ponds and surface water from the right of way is of no benefit or advantage whatever to the railway company or its property, a statement so radical and so contrary to the teaching of human observation and experience in general that the court was justified in refusing to be guided thereby. It appears from the proof that the two miles of railway in question is laid through the usual succession of slight elevations with intervening ponds, sloughs and wet or marsh lands which are common in that part of central Iowa. The map or plat prepared by the company's engineers indicates that, prior to the drainage, about one third of the right of way within the district ran through water and wet, low or marshy ground, one of the stretches of 800 feet being marked as water from 1 to 2 feet deep. For the passage of water under its tracks, the company was maintaining five bridges, two of them being of iron pipe 24 and 36 inches in diameter, and two trestles of one span each, and one trestle of two spans. The main line of the drainage ditch, laid with a 24-inch tile, approaches the right of way from the south near the west end of the district and crosses the right of way through the large pond of which we have spoken, then swinging around a somewhat extended curve to the east and south, it continues east near the line of the right of way, which it crosses again to the south through low and marshy ground about 2,200 feet east of the first crossing. The tile is there enlarged to 30 inches and continues to the southeast. Five thousand feet east of the point where we have noted the last crossing of the right of way by the main ditch, it is crossed by a lateral laid with 18-inch tile through a pond, and again, 1,100 feet still farther east, it is crossed by another lateral laid with 14-inch tile through water. The two laterals are brought together about 1,100

feet south of the right of way, and thence run south toward the main ditch. This survey was made while the ditch was in course of construction and the tile was in operation, to some extent. The engineer says the tile drains seemed to be sufficient to take care of the water, and that upon a more recent visit to the place, he did not observe any water on the right of way. It also appears that, since the ditching was done, the company has taken out the three trestles mentioned and substituted permanent embankments with concrete pipe openings, two of 24-inch and one of 36-inch diameter.

Without going further at this point, it is enough to say that from plaintiff's own showing it must have received very substantial benefits from the drainage afforded by this improvement, and should contribute in fair proportion to its cost.

II. The question left for us to consider is whether the trial court erred in finding the assessment excessive and reducing the amount from $1,500 to $800.

2. DRAINS: railway right of way: assessment of benefits: elements considered.

We have no precedent which enumerates all the elements which may be taken into consideration in considering the benefits to a railroad company or to its property from an improvement of this kind, nor have we any recognized or settled rule by which such benefits may be measured in money with mathematical exactness, nor even with the approximate approach to the measure of exactness which may be applied to farm property or town lots. In cases of the latter kind, the benefits, if any, may to some extent be indicated by showing an increase in market value resulting or reasonably to be anticipated from the improvement. But railroads have no market value in the ordinary sense of that term. They are rarely bought and sold as other property is dealt with on the market; or, if so sold, the things which go to influence their money value, their purchase and sale, are of such magnitude and such character that the existence or nonexistence of a drainage system in any given district would be an entirely

negligible circumstance, and this is no less true if the benefit
to the railway from such system is so clear and undisputed
that no one can be found to question it.  But the fact that the
rule applicable to the assessment of benefits upon real prop-
erty of another character, or rather, property subject to other
uses, is found inapplicable to the property of a railway com-
pany is no reason for holding the statute inoperative as to
property devoted to railroad purposes.   The law presumes
that all the real property within the district is benefited by
the drainage, and the business of the board is to fix its pro-
portionate liability for the expense.  In the court below and
in this court, the board of supervisors adopted the theory that
the benefits of the drainage to the railway are to be ascer-
tained by reference to the greater ease and lessened expense of
maintaining the way, the greater permanence and security of
the fills and embankments, the increased life of ties, posts and
other wooden material, the opportunity afforded the railroad
company to substitute pipe for trestles and thereby give its
track a safer foundation with decreased outlay for upkeep,
and other things of that nature.   There was evidence also
tending in some degree to show the difference which the
changed conditions would make in the expense of maintaining
the road and right of way.  That these conditions, so far as
they are found to exist, do afford a foundation for a fair esti-
mate of the benefits is a reasonable conclusion.   That there
are still other conditions which, in a proper case, may be con-
sidered in estimating such benefits is no doubt true; for exam-
ple, the benefit to the right of way as a mere matter of acre-
age, without special reference to the present use being made of
it.   See *Chicago, R. I. & P. R. v. Centerville*, 172 Iowa ——,
decided at this term of court.*  If the property of a railway
company were being subjected to a complete and itemized
valuation to ascertain a basis upon which to regulate its
schedule of rates, it would naturally and properly insist that
its right of way be estimated upon the present value of the

* Delayed on rehearing, and not yet officially reported.

lands so occupied; for it could not reproduce its road at the present time except on the basis of present land values, and if so, then it would seem that improvements which clearly tend to increase such value are a tangible benefit to the company and its property.

But, taking this case as made by the evidence, we think the judgment below may be affirmed. The commissioners who made the original estimate, and upon whose testimony the

3. DRAINS: assessments: equality of burden: railway right of way.

defendant largely relies, testify in substance that the figure named by them represents the total actual benefit accruing to the railway company. In other words, if the railway company should pay the assessment of $1,500, it will have paid in tax the full amount of the benefits it has received. The evidence also tends to show that the increased value of the farm lands upon which has been laid the heaviest burden of the cost of drainage is two or more times greater than the amount of the tax on the same lands. In other words, assuming the evidence to be correct, the assessment upon the railroad absorbs all the benefits thereto, while the assessments upon the farm lands are only about one half or less than one half of their benefits. This is not what the law contemplates. It is not enough to estimate the amount of benefits derived by any particular piece of property, and from that basis alone determine that the figure so found represents the proper tax. Ordinarily, it is to be expected that the benefits to the property of the district will exceed the tax, otherwise there would be no strong inducement to make the improvement. The true theory of apportionment would require the ascertainment of the full amount of benefit to each and every piece of real property in the district, also the total cost of the improvement. If it be found that the total cost equals the aggregate of all the benefits, then, of course, each piece of property will be taxed the full amount of its benefits; but if the total cost be less than the total benefits, then the tax in each particular case will bear the same proportion to the individual

benefits as the total cost bears to the total benefits. We think the record in this case indicates that the benefits to the entire district were considerably in excess of the cost, and the full benefit found to accrue to the railroad company being ascertained to be $1,500, it was proper for the trial court to scale down the assessment in proportion to that excess.

The judgment appealed from is—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.