CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant,
v. BOARD OF SUPERVISORS OF CLAY COUNTY et al., Appellees.

**DRAINS:** Assessments—Arbitrary Increase. The board of supervisors
has no authority arbitrarily to enter an increased assessment for a
drainage improvement as to one property owner, when the sum
total of such action reduces no other assessment, and results in ex-
acting taxes in excess of the cost of the improvement.

Headnote 1:   19 C. J. p. 738.

*Appeal from Clay District Court.*—D. F. COYLE, Judge.

JUNE 25, 1925.

REHEARING DENIED OCTOBER 2, 1925.

APPEAL from an order entered by the district court of Iowa
in and for Clay County, confirming an assessment of $800
against the right of way of appellant railroad company in Drain-
age District No. 69, Clay County, Iowa.—*Reversed.*

*Cornwall & Cornwall, J. G. Gamble,* and *A. B. Howland,*
for appellant.

*Heald, Cook & Heald,* for appellees.

DE GRAFF, J.—This appeal involves an assessment against
the right of way of the Chicago, Rock Island & Pacific Railroad
Company in Drainage District No. 69, Clay County, Iowa. By
appropriate proceedings it appears that the board of supervisors
legally established the drainage district in question, and sub-
sequently a schedule of assessments within the district was pre-
pared and notice of hearing thereon was given. The original
assessment as returned by the appraisers against the appellant
railroad company was in the sum of $100. The board of super-
visors adopted a resolution increasing said assessment to $800,
to which objections were duly filed by appellant. An appeal
was taken to the district court, and upon trial thereof the peti-

tion was dismissed, and the assessment of $800 against the appellant was confirmed. From the judgment entered thereon, this appeal is taken.

Does the evidence justify the action of the board of supervisors in raising the assessment of appellant? It is conceded that the board of supervisors has authority to raise an assessment; but it is the contention of appellant that it may not be done arbitrarily, or in such manner as to create an excessive assessment.

In *Chicago, R. I. & P. R. Co. v. Wright County Dr. Dist.*, 175 Iowa 417, it is said:

"Under the presumption of benefits derived from a local improvement constructed by statutory authority after due notice to the property owner, and under the inhibition of evidence to the effect that no benefits have in fact been received, neither the district court nor this court is authorized to set aside the levy, and the utmost relief which it can grant in any case is to modify or reduce a given assessment. Nor can this measure of relief be given except upon clear and satisfactory showing that, after considering the various elements which may properly enter into the estimate, the court is satisfied that the assessment has been inequitably apportioned."

The provision of the statute material to be considered in this case reads:

"When the day set for hearing shall have arrived, the board of supervisors shall proceed to hear and determine all objections made and filed to said report and may increase, diminish, annul or affirm the apportionment made in said report or in any part thereof as may appear to the board to be just and equitable." Section 1989-a12, Supplemental Supplement to the Code, 1915.

Clearly, this statute gave the board jurisdiction in the premises; but this is not the point in controversy.

As bearing on the arbitrary character of the assessment, it is obvious under the record that there was no financial necessity for an increase of the instant assessment. What tenable reason is suggested for the increase? As said in *In re Castneer, Williams, Askland Dr. Dist.*, 142 Iowa 716:

"The power given the board to increase assessments does not authorize it so to do arbitrarily, and thereby force from

owners of lands benefited, payments in excess of that necessary to meet the expenses of the improvement; and when this appears to have been done, the court will not hesitate to remedy the abuse of power by an appropriate order.''

The engineer made the survey for this district in the spring of 1919. The major portion of the construction work was done in 1920, and the project completed in 1921. At the time the district was planned, the engineer filed an estimate of cost in the sum of $19,500. On July 22, 1920, the commission of appraisers, consisting of the engineer and two disinterested persons, filed a schedule of assessments, amounting to $20,926. The engineer testified:

''At that time the contracts for labor and material for the district had been let. We figured that our assessment schedule would raise a sum which would cover the cost of construction plus the contingent expense. At that time we knew the contract price, and knew about what the contingent and overhead expenses of the district would be.''

The drainage engineer was well acquainted with the district, and visited it a number of times while the survey was being made, and went over it frequently during the time of construction. The district comprised 1,385 acres, and the appraisal commission viewed the territory several times, in order to fairly and equitably apportion the cost of the improvement against the property owners within the benefited area. It acted with full knowledge of the facts and circumstances, and there is no question that they acted honestly, and without bias or prejudice.

The law authorizes the selection of a competent engineer, and delegates to him certain duties which he performs with due regard to the scientific knowledge which he possesses; and his recommendations should not be set aside for slight or transient reasons. In the instant case he testified:

''I know there is a general benefit from the drainage of lands that would accrue to the public as a whole, and then there is a special benefit which is received by each tract of land in the district. The last is referred to by a drainage engineer as a special benefit.''

Under the conditions as he saw them at the time that the district was under construction, and when the appraisal com-

mission was making up its estimate, he thought that the benefits that would be received by the railroad right of way as to the main ditch would be general in character, and not special.

"The main drain does not come anywhere near the Rock Island track. No part of the southeast main drain comes within a mile of the Rock Island."

Other than the main line, there are two branches or divisions of the drainage district. The southwest branch, known as "14 Branch," has a 6-inch tile, which terminates approximately 500 feet distant from the appellant's right of way. This gives a possible benefit, by affording additional outlet. The other branch, known as "16 Branch," is the only part of the established district that bears directly upon the railroad right of way which the branch crosses at two points. A 6-inch tile laid along the south side of the highway crosses the railroad track; and the undisputed testimony of the engineer is to the effect that it was not thought that this tile would materially improve the right of way, as it was laid for the purpose of affording drainage to the highway west of the railroad track. The engineer testified:

"There would be perhaps 3 or 4 acres of the right of way that would be afforded drainage by 'Branch 16,' and about 2 acres that would be affected by 'Branch 14.' I would say that, out of the 12 acres comprising the right of way, that there are about 6 acres only that would be directly affected by the construction of the drainage district. The remainder of the right of way would receive only a general benefit."

This, in brief, constitutes the viewpoint of the appraisers as to the benefits resulting to the appellant's right of way.

A court recognizes the difficulty in assessing benefits under the circumstances of any case of this character. A drainage assessment is at best but an approximation, and the actual benefits are not susceptible of exact computation or mathematical demonstration. It is also true that many factors enter into the value of drainage to a right of way that do not obtain in a consideration of benefits to farm lands. *Chicago & N. W. R. Co. v. Board of Supervisors*, 171 Iowa 741. Nevertheless, on an appeal involving the raising of an assessment eightfold by the board of supervisors, some reason must be found to justify the increase.

The board of supervisors disregarded the assessment recom-

mendations of the commission as found in its report containing the schedule of assessments. It cannot be said that the primary purpose of the board was equalization, as the assessment of no property owner within the district was reduced one cent. The increase was arbitrarily made, on the initiative of the board of supervisors, who studied the situation for the purpose of assessment but a few hours. One of the members said he voted to raise the assessment for no reason except that he thought the assessment was too low; but this is not a helpful suggestion. High or low assessments are relative terms, and necessarily call for a basis by which a ratio can be expressed. At the time the board examined the right of way with respect to determining the assessment, they found no indications that the ''top of the railroad grade was soft;'' nor was there any evidence ''of any settling of the grade.'' The only evidence of water near the right of way at the time in question was in some borrow pits near what is known as the ''Lundbeck Crossing.'' One witness testified that the railroad company would be benefited by the drainage district by reason of making the traffic safer, and, based on this consideration, he testified:

''There might be a wreck, and I allowed $1,000 benefit for that.''

Some witnesses based the benefits received by the railroad company on the cost to drain the water to the outlet, had the company installed its own drainage. We do not view this as a proper basis of comparison in determining benefits. We have said that it is proper to consider the greater ease and lessened expense of maintaining the right of way. The record offers no proof that the expense of upkeep has been lessened; but, on the contrary, the division engineer of the appellant railroad testified that he had not observed any difference in the cost of maintenance.

''We had never had any extra expense before than we now have since the tile was put in. There would not be very much benefit that I could see.''

We also recognize, as an element of benefit to a right of way, the greater permanence and security of the embankment and the increased life of the wood used in railroad construction, as ties and timbers. The record does not disclose that there is

any appreciable difference in the security given to the embankment, which is from three to five feet above the natural surface of the ground. There are no bridges, trestles, cattle passes, or anything of that sort on appellant's right of way within the limits of the drainage district. The railroad right of way is as high, and in a great part the highest, ground in the drainage district; and the natural flow of the surface water is away from the property of appellant.

We will not review the evidence further. We are satisfied that but a small portion of the appellant's right of way would be directly benefited by the drainage improvement. The assessment as increased does not bear its proper ratio to the cost of the improvement, considering the benefits received by the appellant; and we discover no legal justification for setting aside the original assessment. Wherefore, the judgment entered is—
*Reversed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.