# IN THE SUPREME COURT OF IOWA

No. 15–0740

Filed October 28, 2016

**IOWA ARBORETUM, INC.,**

   Appellee,

vs.

**IOWA 4-H FOUNDATION,**

   Appellant.

_____

   Appeal from the Iowa District Court for Boone County, Steven J. Oeth, Judge.

   Defendant appeals the district court's order denying its motion for summary judgment and granting summary judgment in favor of the plaintiff on its petition for declaratory judgment. **AFFIRMED.**

   David H. Skilton of Cronin, Skilton & Skilton, P.L.L.C., Nashua, and Thaddeus Cosgrove of Cosgrove Law Firm, Holstein, for appellant.

   Ryan G. Koopmans and Kristina M. Stanger of Nyemaster Goode, P.C., Des Moines, for appellee.

**ZAGER, Justice.**

We are asked to determine whether the district court properly granted summary judgment on the plaintiff's petition for declaratory relief and properly denied the defendant's motion for summary judgment. Iowa Arboretum, Inc. (Arboretum) and Iowa 4-H Foundation (4-H Foundation) entered into an agreement to develop an arboretum on 300 acres of land owned by the 4-H Foundation and located in Boone County, Iowa. Later, the parties entered into a ninety-nine-year lease agreement for the same tract of land, some of which included land suitable for agriculture. The majority of the land is used by the Arboretum as an arboretum open to the public. The landowner, 4-H Foundation, now alleges the land is agricultural for purposes of article I, section 24 of the Iowa Constitution and the ninety-nine-year lease is void as it violates the constitutional proscription on agricultural leases exceeding a term of twenty years. The 4-H Foundation served the Arboretum with a notice of termination of tenancy based on this constitutional provision. The Arboretum responded by filing a petition for declaratory judgment and injunctive relief to establish the validity of the lease. The parties filed competing motions for summary judgment. The district court granted declaratory relief to the Arboretum and determined the subject land was not agricultural, declared the lease valid, and ordered the 4-H Foundation to comply with the terms of the lease. The 4-H Foundation appeals from the denial of its motion for summary judgment. For the reasons set forth below, we affirm the decision of the district court. Since the land in question is not agricultural land for purposes of article I, section 24 of the Iowa Constitution, the lease is valid and enforceable.

## I. Background Facts and Proceedings.

The Arboretum owns a forty-acre tract of land in rural Boone County, located south of the city of Boone and northwest of the town of Madrid. The 4-H Foundation owns a 300-acre tract of land immediately south of the land owned by the Arboretum, which is the subject of this case. The legal description of the land is:

> NE 300 acres of the Iowa 4-H Camping Center (the SE1/4 of SE1/4 of Section 3; the NE1/4 and SE1/4 of NE1/4 of Section 3; all of the SW1/4 of Section 2 and Lot 1 of NW1/4 of NW1/4 of Section 11; all in Township 82 North, Range 26 West of the 5th Principal Meridian, Douglas Township, Boone County, Iowa.

The property is zoned as agricultural. The Arboretum has rented the 300-acre tract of land since 1969 and utilizes it and its own forty-acre tract of land to maintain a public arboretum.

On July 1, 1969, the parties signed a Memorandum of Understanding (MOU). The document begins by providing its purpose:

> It is the mutual desire of the Arboretum and the 4-H Foundation that 300 acres of land belonging to the 4-H Foundation . . . and adjacent to 40 acres of land owned by the Arboretum be utilized for public arboretum development by the Arboretum.

In pertinent part, the Arboretum agreed "[t]o develop the NE 300 acres of the Iowa 4-H Camping Center . . . as part of the arboretum for use by the 4-H Camp participants, without charge, and the general public." The Arboretum also agreed to allow "the 4-H Foundation to continue to farm the present crop acres . . . until the Arboretum is ready to develop any of the crop areas for arboretum purposes."

The 4-H Foundation agreed to "lease the 300 acre tract . . . to the Arboretum, Inc. for development into an arboretum." It further agreed that, because the tract of land is adjacent to land already owned by the

Arboretum, it would "be a continuous and unified arboretum under the operation of the Arboretum."

The parties mutually decided that the "Memorandum of Understanding shall comprise an agreement of long term intent for development and maintenance of the arboretum." The MOU contemplated that it would be implemented by consecutive five-year leases. The leases would be reviewed at the end of every fourth year and revised as appropriate before the parties entered into the next five-year lease. The MOU would "remain in force continuously and as modified by the detailed five year leases." In the event that either party decided to sell their land, the other was entitled to the right of first refusal to purchase the property. Finally, if the MOU was terminated, the Arboretum was required to "restore as nearly as practical the premises to the same condition as that existing at the time of entering into this Memorandum of Understanding."

On March 1, 1980, the parties entered into a cash-rent lease intended to supplement the MOU. The 4-H Foundation leased "to the Arboretum for development as part of the Arboretum, the 300 acre tract of property" described in the MOU. In contrast to the consecutive five-year leases contained in the MOU, the parties agreed to a lease for a term of ninety-nine years. The 300-acre tract included 250 acres of timberland, which the Arboretum leased for $1.00 per year. In addition, with respect to the remaining fifty acres which consisted of tillable land, the Arboretum was given, in effect, an option to lease any portion thereof. If the Arboretum chose to exercise this option, the lease provided a formula for determining compensation for the tillable cropland. This formula was based on the accrual net farm income that the 4-H

Foundation earned on the land prior to the Arboretum exercising the lease option.

The parties have been operating under the MOU since 1969 and the lease since 1980. In 1983, the Arboretum's board of directors voted to renew the lease with no changes. In 1990, the Arboretum notified the 4-H Foundation that it intended to lease a portion of the tillable cropland to restore it to native prairie grasses. In 1992, the Arboretum's board again approved the lease. In 2004, the property committees of the 4-H Foundation and the Arboretum met to discuss the lease. The members recommended meeting again in 2009. The 4-H Foundation board and the Arboretum board met in 2005 to discuss the terms of the lease but made no further changes. At that time, one of the 4-H Foundation's trustees suggested meeting again in five years to review the lease. However, the parties did not meet again, and neither party ever requested a meeting to review the lease. The Arboretum made its rental payments through 2013. It tendered rent payments in 2014 and 2015 while this action was pending, but the 4-H Foundation did not cash the rent payments.

The Arboretum developed the majority of the land for use as an arboretum. It also paid an "annual cash rent" for tillable cropland every year. Of the 300-leased acres, 250 acres function as the arboretum. Another 7.1 acres are billed under the tillable cropland formula contained in the 1980 lease. Although this land is billed as tillable crop land, the Arboretum actually uses it as a restored prairie and a parking lot for the public visiting the arboretum. Of the remaining 39.9 acres, all but three acres remains in the possession of the 4-H Foundation under the USDA's Conservation Reserve Program (CRP). Prior to being in the CRP, Hertz Farm Management (Hertz) farmed the acres as row crop.

Hertz currently farms the three acres that are not in the CRP for the 4-H Foundation.

On or around August 28, 2013, the 4-H Foundation served a notice of termination of tenancy on the Arboretum. The notice listed the effective termination date as February 28, 2014. On February 28—the date the termination was to take effect—the Arboretum filed a petition and motion for writ of injunctive relief. The petition alleged the 4-H Foundation termination resulted in a breach of the 1980 lease. The Arboretum sought injunctive relief in the form of a temporary injunction, declaratory judgment establishing the validity of the lease, and specific performance of the lease. The Arboretum also requested attorneys' fees. The district court scheduled a hearing on the petition for March 31. On March 8, the 4-H Foundation served the Arboretum with a notice to quit, asserting that the Arboretum was an unlawful holdover tenant. The notice demanded the Arboretum immediately vacate the premises.[1]

On March 24, the 4-H Foundation filed a forcible entry and detainer (FED) action in Boone County small claims court. In the FED action, the 4-H Foundation stated that the Arboretum was served with a notice of termination of lease and a notice to quit, but had failed to vacate the premises and was holding over. The 4-H Foundation did not include any information about the pending action before the district court to determine the validity of the lease between the parties. The small claims court set a hearing for April 7.

The day after filing the FED action, the 4-H Foundation filed a motion in district court to continue the hearing on the Arboretum's

---

[1]The 4-H Foundation served an amended notice to quit on March 18 because the first incorrectly asserted that the basis for the eviction was the Arboretum's failure to pay rent.

motion for a temporary injunction. The Arboretum resisted the motion to continue on the grounds of urgency created by the 4-H Foundation filing the FED action. The Arboretum also requested that, if the district court ordered a continuance, it also order a continuance of the FED action until after it decided the declaratory judgment action.[2] The district court denied the 4-H Foundation's motion to continue.

The district court held a hearing on March 31 to consider the Arboretum's request for a temporary injunction and the 4-H Foundation's motion to dismiss. At the hearing, the 4-H Foundation argued the lease between the parties violated the Iowa Constitution because of its length of years and therefore its termination of tenancy was proper. The 4-H Foundation further argued that the Arboretum had no right of recovery. The Arboretum argued the terms of the lease were for nonagricultural purposes and the constitutional provision did not apply.

On April 4, the district court issued its ruling denying the motion to dismiss and granting a temporary injunction. The district court noted that the terms of the MOU and the lease both state that the purpose is to develop the land for use as an arboretum. The district court granted the temporary injunction because it concluded the Arboretum demonstrated a sufficient showing of the likelihood of success on the underlying claim for the injunction to be granted. The terms of the injunction prohibited the 4-H Foundation from unlawfully interfering with the Arboretum's control of its business on the premises, terminating the lease until the action before the district court was concluded, trespassing upon the

---

[2]The Arboretum requested the continuance of the FED action because the small claims court would have to consider the right to possession—the same question before the district court in the declaratory judgment action.

premises, or interfering with the Arboretum's nonparty contracts. The district court also ordered the Arboretum to post a $10,000 bond as required by the Iowa Rules of Civil Procedure.[3]

On April 9, the 4-H Foundation filed its answer to the Arboretum's original petition. It resisted the injunction and requested that the declaratory judgment action be dismissed. The 4-H Foundation alleged counterclaims for mediation and breach of contract.

The 4-H Foundation filed a motion for summary judgment on February 19, 2015, and the Arboretum filed a competing motion for summary judgment on February 20. The 4-H Foundation requested that the district court declare the lease between the parties void because the ninety-nine-year lease term was unconstitutional. The Arboretum requested that the district court declare the lease valid because the purpose of the lease was nonagricultural and thus, it did not fall under the constitutional restriction. The Arboretum also asked the district court to uphold its claims for an injunction to enforce the lease and breach of the lease, and to dismiss the 4-H Foundation's breach-of-contract counterclaim.[4]

A hearing was held on March 27, and the district court issued its ruling on April 14. The district court held that, although the tract of

---

[3]The rule provides, in part,

> The order directing a temporary injunction must require that before the writ issues, a bond be filed, with a penalty to be specified in the order, which shall be 125 percent of the probable liability to be incurred. Such bond with sureties to be approved by the clerk shall be conditioned to pay all damages which may be adjudged against the petitioner by reason of the injunction.

Iowa R. Civ. P. 1.1508.

[4]The 4-H Foundation voluntarily dismissed its claim for mediation and only the breach-of-contract claim remained.

land is suitable for agricultural purposes, it was not being used as such. It was being used for the agreed upon purpose of a public arboretum. Further, only a minimal amount of the 300-acre tract was actually utilized as agricultural land.

The district court granted the Arboretum's request for declaratory judgment, finding the lease was not constitutionally infirm and ordering the 4-H Foundation to comply with the terms of the lease. The district court found that the 4-H Foundation had breached the terms of the lease agreement and the Arboretum was entitled to specific performance as a remedy. Because the district court granted the request for declaratory judgment, declared the lease valid, and ordered the 4-H Foundation to comply with the terms of the lease, the court dismissed the injunction as moot. The district court held that the 4-H Foundation was barred from asserting its breach-of-contract counterclaim under the doctrine of estoppel by acquiescence. Finally, the district court denied the Arboretum's request for attorneys' fees. The district court denied the 4-H Foundation's motion for summary judgment. The 4-H Foundation appealed, and we retained the appeal.

## II. Standard of Review.

Generally, our standard of review for cases tried in equity is de novo. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014). However, when an equitable proceeding is before us on a motion for summary judgment, our review is for correction of errors at law. *See, e.g.*, *McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015).

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Rosauer Corp. v. Sapp Dev., L.L.C.*, 856 N.W.2d 906,

908 (Iowa 2014)). Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Iowa R. Civ. P. 1.981(3). A question of material fact exists "if reasonable minds can differ on how the issue should be resolved." *Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 5 (Iowa 2008) (quoting *Walker v. Gribble*, 689 N.W.2d 104, 108 (Iowa 2004)). We view the record in the light most favorable to the nonmoving party. *Id.* However, if the only question is the legal consequence of undisputed facts, it is proper to resolve on summary judgment. *Griffin v. Pate*, 884 N.W.2d 182, 185 (Iowa 2016).

### III. Analysis.

On appeal, the 4-H Foundation argues the district court erred in finding that the Iowa Constitution was inapplicable to the lease between the parties and thus denying its motion for summary judgment. The 4-H Foundation also contends that the district court erred in granting the Arboretum's motion for declaratory judgment establishing the validity of the lease. Last, the 4-H Foundation asserts the district court erred in applying the doctrine of estoppel by acquiescence when it had not been pled by either party. We address each issue in turn.

**A. Article I, Section 24 of the Iowa Constitution.** The 4-H Foundation argues that the 300-acre tract of land it leases to the Arboretum is agricultural land under article I, section 24 of the Iowa Constitution. Because the constitution prevents agricultural leases that are longer than a period of twenty years, the 4-H Foundation argues the ninety-nine-year lease is void as unconstitutional. *See* Iowa Const. art. I, § 24. The Arboretum responds that the tract is not agricultural land

because the parties agreed that its purpose is for an arboretum, and therefore the lease is valid for the full ninety-nine year term.

1. *History of article I, section 24 of the Iowa Constitution.* The Iowa Constitution provides that "[n]o lease or grant of agricultural lands, reserving any rent, or service of any kind, shall be valid for a longer period than twenty years." *Id.* When we interpret this provision, our aim is to ascertain the intent of the framers of our constitution. *See Howard v. Schildberg Constr. Co.*, 528 N.W.2d 550, 553 (Iowa 1995). To do so, we examine the provision's history and "the object to be attained or the evil to be remedied as disclosed by circumstances at the time of adoption." *Id.* (quoting *Redmond v. Ray*, 268 N.W.2d 849, 853 (Iowa 1978)). Nonetheless, as we stated in *Gansen v. Gansen*, the application of a broadly framed constitutional provision is not limited to the specific mischief that motivated the framers. 874 N.W.2d 617, 626 (Iowa 2016).

This provision was not included in the Iowa Constitution of 1846. *Id.* at 624. It was added to the Iowa Constitution of 1857 and was based on a similar provision in the New York Constitution of 1846.[5] *See Casey v. Lupkes*, 286 N.W.2d 204, 205–06 (Iowa 1979); 1 *Debates of the Constitutional Convention of the State of Iowa* 213 (W. Blair Lord rep. 1857), www.statelibraryofiowa.org/services/collections/law-library/ iaconst ("I have copied [the provision], in substance, from the constitution of the State of New York."). New York enacted the restriction on the length of leases for agricultural lands to prevent oppressive, long-

---

[5]The New York Constitution used to include a provision that stated "No lease or grant of agricultural land, for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid." N.Y. Const. art. I, § 14 (1846). New York has since removed this provision from its constitution. *See* N.Y. Const. art. I, § 10 (repealed 1962) (repealing the provision on agricultural leases which had been renumbered in 1958).

term agricultural leases. *Howard*, 528 N.W.2d at 553. At the time of enactment, many of the manorial lands in New York were under agricultural leases for long periods of time. J.W. Tarbox, Annotation *Construction and Effect of Statutes Limiting Duration of Agricultural Leases*, 17 A.L.R. 2d 566, at 567 (1951). "Experience proved that this mode of settling the country was prejudicial to the prosperity and interests of the state . . . ." *Stephens v. Reynolds*, 6 N.Y. 454, 457 (1852). These long-term agricultural leases resulted in significant unrest between lessors and lessees, with disputes sometimes becoming violent. *Gansen*, 874 N.W.2d at 624. As stated by the New York Court of Appeals, "[t]he evil aimed at by the constitution is long leases of farming lands for farming purposes." *Mass. Nat'l Bank v. Shinn*, 57 N.E. 611, 613 (N.Y. 1900).

Consistent with this stated purpose, the New York Court of Appeals originally concluded it was the character of the land, rather than the purpose for which the lease was made, that made a lease agricultural for purposes of the state's constitutional provision. *Odell v. Durant*, 62 N.Y. 524, 525 (1875). In *Odell*, the court was faced with land that was fit for agricultural use but which was leased for the purposes of mining rather than farming. *Id.* However, the parties did not include a provision prohibiting the lessee from farming on the land. *Id.* Thus, the court determined that a lease made solely for the purpose of mining, but which did not include a provision in the lease precluding the lessee from using the land for agricultural purposes, fell under the constitutional provision and was invalid because it exceeded the constitutional term-of-years restriction. *Id.*

The court was faced with a similar question years later, in which the parties entered into a lease for mining on land suitable for

agriculture. *Mass. Nat'l Bank*, 57 N.E. at 613. In this case, the court held that a lease for the purpose of mining but which encumbered land suitable for farming was not an agricultural lease that fell under the constitutional restriction. *Id.* The court reached this conclusion even though a portion of the land was used for agricultural purposes to the extent it was not being used for mining. *Id.* The rationale behind this conclusion was that the small amount of farming being done was "merely incidental" to the stated purpose of the lease and did not convert a lease for mining into a lease for farming. *Id.*

This court reached a similar, though not identical, conclusion in *Howard*, 528 N.W.2d at 554. In that case, the lessor owned a large family farm. *Id.* at 552. They leased a portion of the family farmland to the Missouri Valley Limestone Company under a "limestone and gravel lease" that was for the sole purpose of mining. *Id.* at 551–52. The remainder of the family farmland was leased to other lessees for an agricultural purpose. *Id.* at 552. We concluded that that our constitutional provision limiting agricultural leases to a length of time no longer than twenty years does not apply to land suitable for agricultural purposes but leased for *purely* nonagricultural purposes. *Id.* at 554.

Other states that have similar constitutional or statutory provisions have reached the same conclusion. Michigan also based their original constitutional agricultural provision on the New York Constitution. Mich. Const. art. 18, § 12 (1850); *De Grasse v. Verona Mining Co.*, 152 N.W. 242, 250 (Mich. 1915) (per curiam). The Michigan Supreme Court held that a lease for the sole purpose of mining, though it encompassed land suitable for agricultural purposes, did not violate the constitutional provision limiting agricultural leases to twelve years. *Id.*

This particular lease included a provision that expressly prevented the mining company from using the land for agricultural purposes. *Id.*

In Montana, a statutory provision prevented leases of agricultural land longer than ten years. *See Lerch v. Missoula Brick & Tile Co.*, 123 P. 25, 26 (Mont. 1912) (citing Mont. Revised Codes § 4465). In *Lerch*, a lessor owned a large tract of land and leased a portion of it for the purpose of manufacturing brick and tile. *Id.* at 25. While the land was fit for agricultural purposes, the terms of the lease were that the land would be used for manufacturing purposes. *Id.* at 25–26. The lease did not contain an express provision prohibiting the brick company from engaging in agricultural activity. *Id.* at 27. The court rejected the argument that the lease needed to expressly prohibit agricultural purposes in order for it to be a valid. *Id.* Instead, the court reasoned,

> When a lease of land is made ostensibly for purposes other than agricultural and the land so leased cannot by the terms of the lease, either express or implied, be put to agricultural uses by the lessee, the purpose of the statute has been satisfied, and the land in effect ceases to be agricultural land within the meaning of the law, although susceptible of use for agricultural purposes.

*Id.*

In South Dakota, a tract of land was leased to the Sioux Gun Club "for Club purpose, recreational and social purposes, and not as and for agricultural purposes." *Ryan v. Sioux Gun Club*, 2 N.W.2d 681, 682 (S.D. 1942). At the time the parties entered into the lease, the property was used primarily as a pasture, but had a small growth of timber. *Id.* After the Sioux Gun Club came into possession, it cleared the land to make it suitable for a gun club. *Id.* At various points, the club allowed sheep to graze on the land and grew and sold alfalfa. *Id.* Both of these activities were undertaken in order to hasten the clearing of the land for use as a

gun club. *Id.* The court concurred with the reasoning of the New York, Montana, and Michigan courts and concluded that the lease did not violate the state statutory provision because it provided that the purpose of the lease was to establish a gun club and expressly precluded agricultural activity on the land. *Id.* at 683 (interpreting S.D. Code § 38.0403.

In North Dakota, the owners of a farm leased a four-acre parcel of their land to a broadcasting company for the purpose of installing and maintaining a radio transmitter tower. *Berry-Iverson Co. of N.D. v. Johnson*, 242 N.W.2d 126, 127–28 (N.D. 1976). Although the land was suitable for agricultural purposes, it was leased for the intended purpose of building a radio transmitter and was actually used as a site for a radio transmitter. *Id.* at 132. The court held that the lease did not violate the statutory prohibition on agricultural leases longer than ten years. *Id.* (interpreting N.D. Cent. Code § 47-16-02.

2. *Whether the denial of the 4-H Foundation's motion for summary judgment was appropriate.* In order to find that the lease between the Arboretum and the 4-H Foundation violates article I, section 24 of the Iowa Constitution, three factors must be established: that a lease exists between the parties, that the lease is for a term longer than twenty years, and that the lease is for agricultural purposes. *See Casey*, 286 N.W.2d at 206. The parties entered into a cash rent lease in 1980, and the term was for a period of ninety-nine years. The first two elements are clearly satisfied.

As to the third element, we have previously held that land suitable for agricultural use but used *solely* for nonagricultural purposes does not fall under the constitutional restriction contained in article I, section 24. *Howard*, 528 N.W.2d at 554. We have not yet addressed the

question of whether incidental agricultural use of land leased for a nonagricultural purpose makes land agricultural for purposes of our constitutional restriction on the length of agricultural leases.[6]

Other states whose constitutional or statutory provisions have also been based on the New York Constitution of 1846 have faced the question of land that is suitable for agriculture but actually used for a different purpose. Those states have concluded that the lease did not fall under the term of years exclusion. *See, e.g., Mass. Nat'l Bank*, 57 N.E. at 613; *Lerch*, 123 P. at 27; *Ryan*, 2 N.W.2d at 682. In some of those states, the lessee engaged in farming that was merely incidental to the stated purpose of the lease. *See Mass. Nat'l Bank*, 57 N.E. at 613; *Ryan*, 2 N.W.2d at 682. In others, the lessee's activities were *solely* nonagricultural. *Lerch*, 123 P. at 28; *Berry-Iverson Co.*, 242 N.W.2d at 127–28.

Here, the MOU and 1980 lease both contemplate that the purpose of the lease is to establish and maintain an arboretum. The MOU begins by stating an express purpose:

> It is the mutual desire of the Arboretum and the 4-H Foundation that 300 acres of land . . . be utilized for public arboretum development by the Arboretum. It is the belief of both parties that the development of this land for use as an arboretum is for the mutual benefit of each organization and the Iowa public.

Paragraph two of the 1980 lease establishes that the 4-H Foundation agrees to lease "to the Arboretum for development as part of the

---

[6]We recently heard another case arising under article I, section 24. In *Gansen*, we considered a dispute regarding two five-year leases that automatically renewed for four additional five-year terms. 874 N.W.2d at 618. In the event the leases did automatically self-renew, the lessor and lessee would be locked into a binding twenty-five-year contract. *Id.* at 626. We held that the leases were valid for the first twenty years but invalid once the twenty-year time limit expired. *Id.* We also held that both lessors and lessees could enforce article I, section 24 of the Iowa Constitution. *Id.*

Arboretum" the 300-acre tract of land in question. While neither the MOA nor the lease expressly prohibits the Arboretum from engaging in farming activities, the terms of the lease indicate that neither party expected that the Arboretum would utilize the land as farmland. This is demonstrated most clearly in the terms establishing rates of compensation for leasing the areas of tillable cropland. In the event the Arboretum chooses to exercise its option to lease portions of the tillable cropland, "[c]ompensation for leasing the tillable crop land will be based on the accrual net farm income earned per tillable acre on the remaining tillable crop land the 4-H Foundation presently owns." Compensation is based, therefore, on the profit the 4-H Foundation would have earned if the land were being used for agricultural production.

Further, the Arboretum uses all of the land it has elected to lease for nonagricultural purposes. This land is used for the arboretum, a restored prairie, and a parking lot. Of the 300-acre tract, 250 acres comprise the arboretum itself. The Arboretum has exercised its option to lease 7.1 acres of tillable cropland, which it utilizes for a restored prairie and a parking lot for visitors. Of the remaining land, 36.9 acres are in the 4-H Foundation's possession under the CRP. Hertz farms the remaining three acres for the 4-H Foundation.

Further, this lease is not "[t]he evil aimed at" by the constitutional provision preventing long leases of farming lands for agricultural purposes. *Mass. Nat'l Bank*, 57 N.E. at 613. The provision was enacted to prevent lengthy leases that led to oppression of tenants and violent unrest. *Gannon*, 874 N.W.2d at 624; *Howard*, 528 N.W.2d at 553. The framers intended to prevent long-term leases of agricultural land that led to stagnation and alienation of those parcels of land. *Stephens*, 6 N.Y. at 457; *see also Howard*, 528 N.W.2d at 553. In contrast, this lease was

entered into by two parties who contemplated establishing an arboretum on a parcel of land. The parties further anticipated that farmland would be converted for the use of the Arboretum and included a provision for calculating compensation if and when this occurred.

We conclude that the district court did not err in concluding that the Iowa Constitution was inapplicable to the lease between the parties. We reiterate that when land that can be used for agricultural purposes is, however, leased and used for nonagricultural purposes, the lease does not fall under the constitutional restriction contained in article I, section 24 of the Iowa Constitution.

**B. Validity of Lease.** The 4-H Foundation argues the district court erred in granting the Arboretum's motion for declaratory judgment establishing the validity of the lease. It contends that there is an issue of material fact as to whether the property is agricultural that precludes the granting of the Arboretum's motion for summary judgment. The district court held that the land was nonagricultural and did not fall under the constitutional term-of-years restriction, therefore making the lease valid.

A determination of the validity of the lease necessarily relies on a resolution of whether the lease falls under the constitutional restriction on agricultural leases. Because we find that the lease does not fall under the constitutional restriction contained in article I, section 24 of the Iowa Constitution, we likewise find that the lease is valid.

**C. The 4-H Foundation Breach-of-Contract Claim.** The district court dismissed the 4-H Foundation's counterclaim for breach of contract under the doctrine of estoppel by acquiescence. The 4-H Foundation claims the Arboretum breached the lease by not meeting every four years to approve the terms. The Arboretum did not plead estoppel by acquiescence as an affirmative defense; rather, it argued that

the breach-of-contract counterclaim was barred by estoppel, unclean hands, waiver, and laches. The district court raised the doctrine of estoppel by acquiescence sua sponte and rejected the counterclaim on that ground.

We can uphold the district court's ruling on appeal on an alternative ground, so long as that ground was presented to the district court. *Fennelly v. A-1 Machine & Tool Co.*, 728 N.W.2d 163, 176 (Iowa 2006). Here, the Arboretum moved for summary judgment on the alternative ground that it had not breached the contract between the parties. Generally, to establish a claim for a breach of contract, the 4-H Foundation must show

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Iowa Mortgage Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110–11 (Iowa 2013) (quoting *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)). Offering evidence of damages is required to demonstrate a claim for breach of contract. *Sutton v. Iowa Trenchless, L.C.*, 808 N.W.2d 744, 753 (Iowa Ct. App. 2011).

The 4-H Foundation claims that the Arboretum breached the terms of the 1969 MOU by failing to review the agreement every four years and enter into a new lease every five years. The Arboretum responds that the 1980 cash-rent lease is the controlling document. While the parties entered into the lease to supplement the MOU, they also agreed that the lease would continue for a term of ninety-nine years rather than a number of consecutive, five-year leases.

The 4-H Foundation is unable to demonstrate that the Arboretum breached the contract. The 1980 cash-rent lease states that "[t]he intent of the parties hereto is to continue the lease for a term of ninety-nine years. The lease will be subject to review at the end of four years as per Section IV–B of the memorandum." This section of the MOU states that it will be "implemented by detailed leases for consecutive five-year terms. Each five-year lease is to be reviewed at the end of the fourth year and revisions as appropriate made in the next detailed lease."

We must determine how to reconcile and give effect to these seemingly conflicting terms. *See, e.g., Alta Vista Props., LLC v. Mauer Vision Center, PC*, 855 N.W.2d 722, 729 (Iowa 2014).

> Parties may modify the terms of their agreement and if the terms of a subsequent agreement contradict the earlier agreement, the terms of the later agreement prevail, and supersede those of the earlier contract. Where two contracts are made at different times, but where the later is not intended to entirely supersede the first, but only to modify it in certain particulars, the two are to be construed as parts of one contract, the later superseding the earlier one wherever it is inconsistent.

17A Am. Jr. 2d *Contracts* § 489, at 469–70 (2016) (footnotes omitted). We have generally recognized when the parties modify a contract, a new contract arises. *See, e.g., Chapman's Golf Ctr. v. Chapman*, 524 N.W.2d 422, 426 (Iowa 1994). The parties to a contract may supersede or modify the contract at any time. *Recker v. Gustafson*, 279 N.W.2d 744, 754 (Iowa 1979). They "may by a new and later agreement rescind it in whole or in part, alter or modify it in any respect, add to or supplement it, or replace it by a substitute." *Id.* (quoting Am. Jur. 2d *Contracts* § 462, now found at 17A Am. Jur. 2d *Contracts* § 489, at 469)). When the parties to a contract modify the terms, there must be some new and valid consideration. *Margeson v. Artis*, 776 N.W.2d 652, 657 (Iowa 2009). We

generally presume that a written and signed contract is supported by consideration. *Id.* at 656.

Here, the terms of the lease and the MOU are inconsistent with regard to the length of the lease. A lease cannot be both for a term of ninety-nine years and made in multiple, recurring, five-year periods. The language used by the parties substitutes the consecutive five-year lease period for a new, long-term lease of the property. Adequate consideration was given for the modification because the lease was in writing and, prior to the 1980 cash-rent lease, the parties were under no obligation to continue with a long-term lease past each five-year period. To the extent that the ninety-nine-year term conflicts with the terms of the MOU, the 1980 cash-rent lease controls. We hold that the 4-H Foundation has failed to demonstrate that the Arboretum breached the terms of the lease. The district court was correct in denying summary judgment to the 4-H Foundation.[7]

**IV. Conclusion.**

For the foregoing reasons, we hold that the district court was correct in granting the declaratory relief to the Arboretum. The district court was also correct in denying summary judgment to the 4-H Foundation on its breach of contract claim. We accordingly affirm the decision of the district court.

**AFFIRMED.**

---

[7]Because we decide that there was no breach of the contract as a matter of law, it is not necessary for us to decide the other affirmative defenses raised by the Arboretum.