# IN THE COURT OF APPEALS OF IOWA

No. 20-0814
Filed June 16, 2021


**UNION PACIFIC RAILROAD COMPANY and MIDWESTERN RAILROAD PROPERTIES,**
        Plaintiffs-Appellees,

**vs.**

**DRAINAGE DISTRICT 67 BOARD OF TRUSTEES, GARY RABE, in his capacity as a member of the Board of Trustees, KEITH HELVING, in his capacity as a member of the Board of Trustees, and DENNIS PROCHASKA, in his capacity as a member of the Board of Trustees,**
        Defendants-Appellants,

and

BECCA JUNKER, in her capacity as Hardin County Drainage Clerk, and JESSICA LARA, in her capacity as Hardin County Auditor,
        Defendants.
_____


        Appeal from the Iowa District Court for Hardin County, James A. McGlynn,

Judge.


        A drainage district appeals the order granting summary judgment in favor

of a railroad in an action to set aside a reclassification of drainage benefits.

**AFFIRMED AS MODIFIED.**

        David R. Johnson of The Johnson Law Firm, PLC, Clarion, for appellants.

        Keith P. Duffy of Nyemaster Goode, P.C., Des Moines, and David M.

Newman, Omaha, Nebraska, for appellees.


        Heard by Doyle, P.J., and Mullins and May, JJ.

**DOYLE, Presiding Judge.**

Drainage District 67 Board of Trustees appeals the order granting summary judgment in favor of Union Pacific Railroad Co. on its challenge to the board's reclassification of drainage benefits and assessment for repairs. The district court found the board acted inequitably in finding the railroad benefited at the rate of 100% and in assessing the railroad one-half the total cost of a repair project. The board contends the district court erred by granting the railroad's motion for summary judgment and reinstating the previous classification of benefits.

**I. Background Facts and Proceedings.**

Midwestern Railroad Properties, a wholly owned subsidiary of Union Pacific Railroad, built a railway within its right of way in Hardin County in 1913. The property is included in Drainage District 67, established in 1915. The district constructed an artificial tile to drain the agricultural lands in the district. The main tile crosses the railroad's right of way. The railroad was assessed 5.81% of the original assessment for its share of the drainage benefits.

In 2018, the board discovered the century-old tile needed repair or replacement. Approximately 1125 feet of the lower end of the main tile (about 30%) was investigated according to the engineer's report to the district. Various defects in the tile were found including indication of a collapse under the railroad tracks. The engineers concluded "[i]f repairs are not performed, the lower end of the Main tile will continue to deteriorate/collapse and will continue to allow soil to enter the Main tile." The engineers proposed either spot repairs or tile replacement. Either way, "the current railroad crossing would not be removed, but would be abandoned and a new crossing will be installed at a location dictated by

railroad standards." The report projected probable construction costs for spot repairs to be $127,650 and for tile replacement to be $142,140. In order to comply with federal safety requirements, the portion of the repair running under the right of way required sturdier materials like steel casing and mechanically restrained leak resistant joints. Using these materials increased the total cost of repair to roughly twice what it would cost to install a similar length and dimension of corrugated plastic pipe through agricultural land. The district received a base bid total of $200,891 for the project. Of that figure, $98,343 was for items that were necessary to prevent erosion at the railroad crossing—about 49% of the project cost. Because tracts of agricultural land receiving the greatest benefit would be required to pay as much as $1600.00 to $2282.60 per acre for the repair, the Drainage District 67 Board of Trustees appointed a commission to reclassify the lands in the drainage district. In its report, using a sample project cost of $250,000, the reclassification commission found that approximately one-half of the construction costs resulted from federal regulations,[1] and it determined the railroad receives 100% of the benefit of complying with those regulations. As a result, it recommended assessing the railroad one-half of the $250,000 total cost of repair.

The board held a public hearing on the reclassification commission's report, and the railroad objected to the reclassification. At the hearing, the board approved the reclassification of benefits. The railroad appealed the board's

---

[1] The commission's report states that roughly one-half of the construction costs "were associated with requirements by the Union Pacific Railroad to prevent erosion on their property and the resulting protection of the Union Pacific Railroads facilities." But it is undisputed that the repair specifications resulted from federal regulations.

decision to the district court, and both parties moved for summary judgment. The district court granted summary judgment in favor of the railroad, reinstating the original benefit classification.

**II. Scope and Standard of Review.**

Although this is an equity action, we review a summary judgment ruling for the corrections of errors at law, viewing the record in the light most favorable to the nonmoving party. *See Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 700 (Iowa 2016). Summary judgment is proper when the undisputed material facts show the moving party is entitled to judgment as a matter of law. *See id.* A material fact is in dispute if reasonable minds can differ on how to resolve the issue. *See id.*

**III. Reclassification and Assessment.**

Iowa Code chapter 468 (2018) governs drainage districts. It requires drainage districts to keep any improvements in good condition and to pay for repairs. *See* Iowa Code §§ 468.126(1), 468.127(1). When the district has insufficient funds to pay for a repair, it must assess the cost of repairs to the property located within it in proportion to the benefit the land receives from the improvement. *See id.* §§ 468.38, 468.127(1); *Chi. Cent. & Pac. R.R. v. Calhoun Cnty. Bd. of Supervisors*, 816 N.W.2d 367, 372 (Iowa 2012) ("[A]ny repair to the drainage improvement will ultimately be paid for solely by assessing the property located in the district."). The classification of benefits remains the basis of future assessments unless the district board of trustees reclassifies the land. *See* Iowa Code § 468.49.

When a repair becomes necessary, the board of trustees may reclassify the property within the district if the current assessments are "generally inequitable." *See id.* § 468.65(1). The reclassification may consider any benefits of a character for which drainage districts may be established that are attributable to the repair. *See id.* § 468.65(1)(c). A reclassification commission determines the percentage of actual benefits received by each tract of land and makes an equitable apportionment of the cost of repairs. *See id.* § 468.67. The board then affirms, increases, or diminishes the percentage of benefits assessed as it deems just and equitable. *See id.*

The board's assessment can be modified if there is "evidence that impeaches the officially expressed judgment of the commissioners and board in making the assessment, and a showing that essential elements which should enter into the estimate were not considered, or that an erroneous assessment and an inequitable apportionment was made." *Cordes v. Bd. of Supervisors of Hamilton Cnty.*, 196 N.W. 997, 999 (Iowa 1924). The question is whether the assessment "represents a fair proportional part of the total cost" of repair. *See Chi. & N.W. Ry. Co. v. Dreessen*, 52 N.W.2d 34, 38 (Iowa 1952). Although there is a presumption that the commission's report is correct, it can be set aside for fraud, gross error, or evident mistake. *See Hatcher v. Bd. of Supervisors of Greene Cnty.*, 145 N.W. 12, 15 (Iowa 1914). "[T]he burden is on the objector to show the cost was not properly assessed." *Wilkinson v. Heald*, 127 N.W.2d 622, 625 (Iowa 1964).

The district court found the railroad met its burden of showing the board acted inequitably because it reclassified the land based on matters that "were not benefits or were otherwise not proper subjects of consideration." Specifically, the

court found the board "engaged in 'antics with semantics'" by characterizing the "extra costs" of repair attributable to federal requirements to be a benefit to the railroad in order to lower the assessments to the other lands. Although the cost of repair would result "in painfully large assessments to the landowners in the district," the court noted the concept "that a repair must be 'reasonable and affordable' for the landowners does not appear anywhere in the drainage code." It found the reassessment "was made for the inequitable purpose of supporting a subjective opinion regarding the cost of the repair rather than following the law" and "was based on prejudice, gross error, and mistake" for four reasons: (1) the costs of construction are not "benefits of character" that may be considered in a reclassification; (2) the costs of federal compliance are not benefits that may be considered in a reclassification; (3) the method used to reclassify the lands is contrary to case law; and (4) reclassification cannot be based on the railroad's ability to pay.

Iowa courts have long recognized the difficulty in assessing drainage benefits. *See Chi., Rock Island & Pac. R.R. v. Bd. of Supervisors of Clay Cnty.*, 204 N.W. 311, 312 (Iowa 1925) ("A drainage assessment is at best but an approximation, and the actual benefits are not susceptible of exact computation or mathematical demonstration."). "It is also true that many factors enter into the value of drainage to a right of way that do not obtain in a consideration of benefits to farm lands." *Id.* Our supreme court found that, to the extent they exist, it is reasonable to consider as benefits

> the greater ease and lessened expense of maintaining the way, the greater permanence and security of the fills and embankments, the increased life of ties, posts, and other wooden material, the

> opportunity afforded the railroad company to substitute pipe for trestles, and thereby give its track a safer foundation with decreased outlay for upkeep, and other things of that nature.

*Chi. & N.W. Ry. Co. v. Bd. of Supervisors of Hamilton Cnty.*, 153 N.W. 110, 111 (Iowa 1915). But the apportionment must be made "strictly in accordance with the benefits reasonably to be expected or actually enjoyed." *Thielen v. Bd. of Supervisors of Wright Cnty.*, 160 N.W. 915, 919 (Iowa 1917). For instance, "the greater ease and lessened expense of maintaining the right of way" cannot be considered unless there is evidence that the expense of upkeep has been lessened. *Clay Cnty.*, 204 N.W. at 313.

In reclassifying the property in the district, the board may consider "[a]ny benefits of a character for which . . . drainage districts may be established and which are attributable to or enhanced . . . by the repair." Iowa Code § 468.65(1)(c). But the cost of construction across a particular property is not a consideration in apportioning benefits. *See Pollock v. Bd. of Supervisors of Story Cnty.*, 138 N.W. 415, 416 (Iowa 1912); *see also Conklin v. City of Des Moines*, 168 N.W. 874, 876 (Iowa 1918) ("Lands for the purpose of assessment for drainage purposes are classified upon a percentage basis and without special reference to the expense of constructing the improvement across, or in the vicinity of, any given tract."). Although the board claims federal compliance provides a special benefit to the railroad that justifies the increased assessment, we disagree. The requirement for sturdier material to replace the tile in the right of way is merely a byproduct of the repair's location in order to prevent another collapse from the stress the substantial weight a locomotive engine and rail cars passing across the right of way would place on the tile over time. A second collapse would render the repair useless,

negating the benefit to not only the railroad but the entire district.[2] The increased cost of repair thereby provides drainage benefits to all property in the district. In *United States Railroad Administration v. Board of Supervisors of Buena Vista County*, 194 N.W. 365, 366 (Iowa 1923), our supreme court held it improper to assess a railroad one-half the cost of constructing a highway bridge over a drainage ditch in addition to the drainage benefits assessed to the railroad because the bridge's construction was merely a byproduct of constructing the drainage ditch:

> Assuming that $300 was the fair measure of benefit received by the plaintiff from the diversion of the creek, we are at a loss to see how the construction of a bridge over the ditch at its junction point of the highway added anything to the diversion benefit included in the $300 assessment. The construction of the bridge *added* nothing to the benefits of the railroad company. The benefit to the railroad company was in the diversion of the water. The construction of the bridge was a necessary incident in the course of the improvement and was a necessary part of the cost thereof. It was nothing more. The same would be true of the cost of the right of way and excavating the ditch thereon. These necessary expenses make up the sum total of the cost of the improvement upon which the approximation of the benefits is predicated. If there were no costs of improvement, there would be no assessable benefits. The plaintiff was liable for its equitable apportionment of benefits in the same manner as every other benefited property owner. Such apportionment was necessarily predicated upon the necessary costs of the improvement. This would necessarily include the costs of the right of way and of excavating and of the construction of necessary bridges.

*Buena Vista Cnty.*, 194 N.W. at 367. We reiterate, the cost of construction across a particular property is not a consideration in apportioning benefits. *See Pollock*,

---

[2] We also note that the right of way existed before the drainage district was established. Unlike most cases involving a railroad right of way, the drain here collects surface runoff in the drainage area and transports it *to* the right of way when it would not otherwise arrive there. On this basis, the railroad's expert opined that the railroad "receives the least benefit of any tract within the District."

138 N.W. at 416; *see also Conklin*, 168 N.W. at 876.  Because the repair of the tile benefits all property in the district, it is arbitrary to assess the railroad for the entirety of the increased cost of federal compliance that adds nothing to the railroad's drainage benefits.

In determining reassessment was necessary, the commission and board also acted improperly by considering how much the other properties in the district would be assessed for the cost of repair under the prior assessment:

> It must be strictly understood that the average assessment per acre, as to all properties outside of plaintiffs', is no criterion for reassessment of the property by the commissioners and Board of Supervisors.  The properties must be carefully, and with equality, reassessed, on the basis of benefits as to each property.

*See Martin v. Bd. of Supervisors of Polk Cnty.*, 100 N.W.2d 652, 658 (Iowa 1960).

In reclassifying the land in the drainage district, the commission and board improperly considered both the increased cost of repair necessitated by the tile's location on the railroad's right of way and the per-acre assessments to other property required under the original classification.  The railroad met its burden of showing the assessment is inequitable as a matter of law.

**IV. Remedy.**

The board challenges the remedy fashioned by the district court.  The pertinent part of the order states:

> 3. The reclassification of benefits and the assessment made against the plaintiffs are declared void and of no force or effect.
> 4. The defendants and each of them are permanently enjoined from issuing further assessments or demanding payment from the plaintiffs based on the reclassification of benefits.
> 5. The previous classification of benefits is reinstated.

Citing *Chicago, Rock Island & Pacific Railway Co. v. Wright County Drainage District No. 43*, 154 N.W. 888, 888 (Iowa 1915), the board contends that the only available remedy is amending the classification of benefits. In that case, our supreme court held it was without authority to set aside a levy against property in a designated drainage district based on a claim that the property received no benefit from a drainage improvement. *Wright Cnty.*, 154 N.W. at 888. But the court noted that if the clear and convincing evidence shows an assessment has been inequitably apportioned, the court can modify or reduce it. *Id.*

We have determined the board's reclassification is based on an inequitable assessment of benefits. Injunctive relief is only available if the board's assessments are void because it acted without authority and jurisdiction. *See Petersen v. Sorensen*, 185 N.W. 42, 45 (Iowa 1921).

> The proceedings were begun under a valid statute, and, save for some possible irregularities or illegality in the subsequent proceedings rendering the assessments voidable or inequitable, which could only be corrected on appeal, they must be permitted to stand. We have the power in this proceeding to review the proceedings of the board, or to correct inequalities in assessments.

*Id.* at 45–46. But we can only correct inequities in the railroad's assessment. *See* Iowa Code § 468.96 ("Upon appeal the decision of the court shall in no manner affect the rights or liabilities of any person who did not appeal."); *Bibler v. Bd. of Supervisors of Hamilton Cnty.*, 142 N.W. 1017, 1018–19 (Iowa 1913) ("It is enough for the purpose of this case to find that the assessment of the plaintiff was too high, and to fix the limit of such assessment. . . . [B]ut the adjudication in this case can go no farther than to settle the limit of the plaintiff's assessment."). We therefore affirm the district court's order but modify it to eliminate paragraphs three through

five and instead provide that the railroad's property be assessed at its original 5.81% benefit rate.

**AFFIRMED AS MODIFIED.**